[Civ. No. 28152. First Dist., Div. One. May 21, 1971.]

BOBBY ADKINS, Plaintiff and Appellant, v.
WILLIAM LEACH et al., Defendants and Respondents.

**COUNSEL**

Maurice Jourdane for Plaintiff and Appellant.

William H. Stoffers, County Counsel, and John O. Thornberry, Assistant County Counsel, for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Plaintiff Bobby Adkins, on behalf of himself and all others similarly situated, filed an action "for injunction and declaration [*sic*] relief" against the Monterey County Board of Supervisors, the county welfare department, and certain officials of that department. A general demurrer to his amended complaint was sustained after which a judgment of dismissal of the action was entered. The appeal is from the judgment.

The amended complaint purports to state three causes of action, the separate statements of which are not exemplary. We interpret its allegations as follows.

COUNT ONE: Adkins, "a disabled father," with his family of four left his home in Kansas, destined for California. He arrived in Monterey County without funds or available living quarters, and with a short supply of food. He promptly contacted the county welfare department and, informing that agency of his needy circumstances, applied for "Aid to Families with Dependent Children" (see Welf. & Inst. Code, §§ 11200-11507), which application was accepted and thereafter processed. He also applied

for general relief covering his immediate needs, i.e., food vouchers and rent assistance.[1]

The application for general relief was denied. He "was told that he could receive a food voucher only after he could give the department an address of a dwelling at which he was residing." He was also told "that he could receive rent assistance only if he could find a vacant dwelling and a landlord who would accept payment a month or two after the outset of the tenancy with the possibility he would not get any money if the tenant was not eligible for Categorical Aid, . . ." Adkins then commenced a search within the county for such a dwelling and landlord. He met with no success; payment of rent in advance was uniformly required. He reported his failure to the welfare office and repeated his request for immediate general relief. The request was again denied, for the reason previously given. Thus Adkins and his family were in a position of frustration where they could obtain no relief until they had a county residence, and they could acquire no county residence until they were furnished relief. As a result, he alleges, his family and "all others similarly situated" were and "are compelled to live in the streets and cannot obtain food," and have suffered and are suffering irreparable injury.[2] Defendants "have thus adopted an emergency relief system that does not give relief. In so doing, they have failed to perform the obligation imposed upon them by Welfare and Institutions Code Section 17000. . . ."

The relief sought as to count one is "an order declaring that the present food voucher and deferred rent systems do not fulfill defendant Supervisors' duty under Welfare and Institutions Code Section 17000."

COUNT TWO: Generally the allegations of count one are here incorporated. In addition it is alleged: "California Welfare and Institutions

---

[1] In his briefs on appeal, apparently correctly, Adkins has explained: "General assistance is administered by the County Welfare Department and is financed solely by the County, pursuant to a duty to support indigents created by California Welfare and Institutions Code § 17000. It is distinguished from categorical aid programs which are administered by the County Welfare Department pursuant to Federal and State regulations and with Federal and State funds. Categorical aid includes Aid to Families with Dependent Children, Aid to the Disabled, Aid to the Blind, Aid to the Partially Blind, and Old Age Security."

[2] It seems proper to point out that the distress of the Adkins family upon their arrival in Monterey County was not as great as is pointed out in detail in the complaint and amended complaint. The family was temporarily assisted by the Salvation Army. Nine days after their arrival they commenced receiving "Aid to Families with Dependent Children" (categorical aid). Under this plan the county welfare department pays the family $239 each month. Although not alleged in the complaint or amended complaint, and therefore not relevant to the demurrer, or this appeal, this information appears in the record on proceedings for a preliminary injunction which antedated the sustaining of the demurrer below.

Code Section 17001 imposes upon the defendant Board of Supervisors the duty to promulgate regulations to set standards of assistance granted pursuant to Section 17000. [¶] Said defendants have not fulfilled the obligation imposed by Section 17001, in that no regulations delineating the type or amount of assistance, the conditions upon which it will be granted, nor the procedure pursuant to which the program is to be carried out have been promulgated. [¶] As a result of such failure, a determination of whether plaintiff and the class he represents are to receive aid and how such aid, if any, is granted, is left to the whim and fancy of non-supervisorial discretion, denying plaintiff and the class he represents the right to have standards for eligibility and procedures for dispensation of general relief set and determined by the Monterey County Board of Supervisors."

The relief sought as to count two is "an order compelling defendant Board of Supervisors to promulgate regulations as required by Welfare and Institutions Code section 17001."

COUNT THREE: Generally the allegations of counts one and two are incorporated in count three. Additionally, the following is alleged: "As a result of defendant Board of Supervisor's failure to promulgate rules pursuant to Welfare and Institutions Code Section 17001, rules governing the Monterey County general relief program have been adopted by others without public hearing, and are changed from time to time, as the Welfare Department desires. As a result, plaintiff, and the class he represents, is deprived of Due Process of Law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution."

The relief sought as to count three is "an order prohibiting defendant Welfare Department from enacting and enforcing general relief regulations not adopted by defendant Board of Supervisors."

In each of the three counts of the amended complaint Adkins alleges: "This cause of action is brought by plaintiff, Bobby Adkins, on his own behalf and on behalf of all other general relief applicants. There are common questions of law and fact concerning his rights and those of all other general relief applicants. The class is so numerous that joinder by all the members is impractical. The representative party will fairly and adequately protect the interest of the class. The claims of the representative are typical of the class."

The defendants demurred to the amended complaint on the following grounds: "[1] That the complaint fails to state facts sufficient to constitute a cause, or causes, of action. [2] That the court has no jurisdiction of the subject of the action, in that there is no real controversy or dispute between

the parties. [3] That there is a misjoinder of parties plaintiff, in that the plaintiffs designated as 'all others similarly situated' are not members of an ascertainable class of persons and do not have a common or general interest in this litigation."

The demurrer was sustained by the trial court on the single stated ground "not class action—not ascertainable."

The following sections of the Welfare and Institutions Code are pertinent to this appeal.

Section 17000: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."[3]

Section 17001: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county, . . ."

Section 17006: "The board of supervisors of every county as a board, or by committee or by such person or society as it may authorize, shall investigate every application for relief from the funds of the county, . . ."

The sustaining of defendants' general demurrer to the amended complaint was proper only if each of its three counts did not state a cause of action. (See *Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5].) Of course, if the general demurrer should have been sustained on any ground, the reason stated therefor by the court is immaterial. And the allegations of the amended complaint, for the purposes of demurrer must be deemed true. (*Kenworthy* v. *Brown,* 248 Cal.App.2d 298, 300 [56 Cal. Rptr. 461].)

We choose first to consider counts two and three and whether a proper representative or class action is stated therein.

Adkins' argument with respect to these counts may be summarized in this manner. The law, section 17000, requires a county to render general aid to the class of persons therein described. Section 17001 mandates the county supervisors to "adopt standards" under which such aid is rendered. The Monterey County Board of Supervisors has not (as alleged in the amended complaint) adopted standards under which aid is to be given

---

[3]From the amended complaint it can reasonably be inferred that Adkins and his family had become residents of Monterey County. Defendants make no contention to the contrary. "The matter of residence is essentially one of intention." (*Joe Lowe Corp.* v. *Rasmusson,* 53 Cal.App.2d 490, 496 [127 P.2d 1002].)

to (or withheld from) the persons described in section 17000. Instead, such standards were adopted by the county welfare department, or some other "non-supervisorial" body or person unknown.[4] He, Adkins, is one of the persons described in section 17000, and is therefore entitled to have his eligibility for aid determined by standards adopted by the board of supervisors. And "all others similarly situated," i.e., persons desiring county aid who are described in section 17000, are equally entitled to have their right to aid determined by supervisorially adopted standards.

The basic authority in this state for the maintenance of class actions is Code of Civil Procedure section 382 which, as pertinent, provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

The California Supreme Court in *Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732], has collected relevant authority and restated the circumstances under which such actions are permissible. The court says that "two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented. [Citations.]"

In the case at bench it must reasonably be said that persons described in section 17000, who apply to a county for general aid under that section, are members of a "readily ascertainable class." And with equal reason it appears that persons of that class have a well defined community of interest in the question posed by Adkins' amended complaint (counts two and three), i.e., whether their right, if any, to such aid shall be determined by the board of supervisors in accordance with section 17001, or by some other body or person. And the question whether relief to indigent persons shall be administered in accordance with law is obviously one of "common or general interest." (See Code Civ. Proc., § 382.)

Further, it is obvious that members of a class entitled to relief under section 17000 are entitled to access to the courts in order to secure adoption of standards for such relief in accordance with section 17001.

---

[4]We note that in his initially filed unverified complaint Adkins alleged that the Monterey County Board of Supervisors had in fact promulgated the subject standards which his amended complaint alleges to have been adopted by others. But the earlier withdrawn allegation was not relevant to the hearing on the demurrer to the amended complaint, nor is it relevant here. As indicated above, the allegations of the amended complaint, for the purposes of demurrer must be deemed true.

We hold that counts two and three of the amended complaint properly plead a class action, and causes of action for the requested relief. The general demurrer as to those counts should have been overruled and the judgment of dismissal of the action was erroneous.

■ We now advert to count one, on the basis of which Adkins seeks "an order declaring that the present food voucher and deferred rent systems do not fulfill defendant Supervisors' duty under Welfare and Institutions Code section 17000." The argument here, although not clear, seems to be that the rule, by whomsoever adopted, that a general relief applicant (under § 17000) may have neither food vouchers nor rent assistance, until he is able to furnish a dwelling address, is unreasonable and arbitrary. As we have indicated such a standard if adopted by an agency or person other than the county board of supervisors would, by virtue of section 17001, be invalid. We consider now, the legal effect of such a standard if adopted by the board of supervisors, a fact which may be established at the trial.

■ California's appellate courts have considered the language of Welfare and Institutions Code section 17000. This section is identical with a predecessor, section 2500 of the same code (see Stats. 1937, p. 1097).

In *County of L. A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 [260 P.2d 41], the Supreme Court stated: "The counties alone are charged with the duty of furnishing relief to indigent residents who are not otherwise supported. (Welf. & Inst. Code, § 2500; *County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634 [122 P.2d 526].) No federal or state funds are provided for this purpose, and the counties are not required to grant any specific type of relief or to pay any specific amount of money. The administration of county relief to indigents, as distinguished from old age security and needy blind assistance, is vested exclusively in the county supervisors who have discretion, without supervision by the state, to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief. [Citation.]"

*Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217], asserts: "The administration of county general relief given pursuant to section 2500 of the Welfare and Institutions Code is vested in the county boards of supervisors. The Welfare and Institutions Code does not require that the county grant indigents any specific type of relief nor does it require the payment of any specific amount of money to indigents nor prescribe the time at which payments are to be made. These are matters within the discretion of the boards of supervisors and the court has no authority to interfere with the administrative determinations of a board of supervisors with respect to the granting of county general relief in the

absence of a clear showing of fraud or arbitrary or capricious conduct. . . ."

Both the statutes and the appellate courts have made it clear that counties *shall* support *resident* indigent persons (§ 17000) according to standards adopted by their boards of supervisors (§ 17001). And in the discharge of their statutory duty, the county supervisors have discretion "to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief." (*County of L. A.* v. *Dept. of Social Welfare, supra.*) The courts have no authority to interfere "in the absence of a clear showing of fraud or arbitrary or capricious conduct." (*Patten* v. *County of San Diego, supra.*)

Neither arbitrary nor capricious conduct (nor fraud) can reasonably be inferred from the pleaded requirement that immediate general relief is available "only after the needy person has an address which can be given to the Welfare Department as his place of residence." Such a requirement is obviously reasonable. A county disbursing relief under the direction of section 17000 is fairly entitled to some objective criteria whether an applicant is truly a resident of the county. One in Adkins' position could otherwise collect his general relief and then pass on, perhaps to repeat his demand in another county. And in such cases the requirement of section 17006 (quoted in pertinent part *ante*), that an applicant for general relief be investigated would obviously be frustrated by payment before investigation to one with no county address.

If on the trial of the action it shall appear that the questioned rule, requiring the address of a relief applicant's dwelling before a grant of general assistance is allowed, was adopted by the county board of supervisors, we conclude under those circumstances that such a standard was within that body's discretion and neither unreasonable nor arbitrary. The order sustaining the demurrer as to count one must also be set aside to allow defendants, if they can do so, to establish at the trial that the standard in question was adopted by the county board of supervisors.

The judgment of dismissal of the action is reversed. The superior court will set aside the order sustaining defendants' general demurrer and thereafter take proceedings not inconsistent with the views we have expressed.

Molinari, P. J., and Sims, J., concurred.