[Civ. No. 32992. First Dist., Div. Four. July 26, 1974.]

RICHARD BERKELEY et al., Plaintiffs and Appellants, v.
ALAMEDA COUNTY BOARD OF SUPERVISORS et al.,
Defendants and Respondents.

**COUNSEL**

Robert L. Valencia, Kathy Sue Krohn, Jerry L. Rossman and James R. Abernathy II for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and Kelvin H. Booty, Jr., Deputy County Counsel, for Defendant and Respondent.

## OPINION

CALDECOTT, P. J.—Appellants Richard Berkeley and Myra Wolch appeal from an order denying their petition for writ of mandate and dismissing their complaint for declaratory relief.

Petitioners Richard Berkeley and Myra Wolch were recipients of general assistance in Alameda County. During the months of February through May of 1972, petitioners Berkeley and Wolch shared a house in Berkeley with a nonrecipient, Ms. Noel King. In May 1972, petitioners Berkeley and Wolch moved into housing separate from Ms. King.

During the period of February through May 1972, Alameda County computed petitioners' general assistance grants on the basis of a household of three. Each petitioner thus received only one-third of the maximum grant for three persons.

Appellants in this action sought to stop respondents from computing the grants of unrelated general assistance recipients residing in a common household in the same manner as a family group, and to require respondents to base any reductions in the level of general assistance grants to unrelated recipients residing together on a showing of reduced need.

### The Declaratory Relief Action Should Not Have Been Resolved by a Dismissal of the Complaint

Without stating any reasons, the trial court below denied appellants' petition for a writ of mandate and dismissed their complaint for declaratory relief. It is clear that a trial court cannot decide the merits of a plaintiff's case in a declaratory action suit by dismissal (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 730, pp. 2350-2351; *Sullivan* v. *San Francisco Art Assn.*, 101 Cal.App.2d 449, 455 [225 P.2d 993]), if the plaintiff pleads an actual controversy.

Respondents did not demurr to appellants' cause of action, nor did they move for dismissal. In their answer, respondents admitted that an actual controversy existed between petitioners and respondents.

A reading of the trial court's order of October 31, 1972, makes clear that the decision was on the merits. The trial court stated as follows: "The above-entitled matter having regularly come on for hearing before this Court on October 17, 1972, . . . and the Court having considered the

pleadings on file in the within action, and the arguments of counsel, and the matter having been submitted for decision, and good cause appearing therefor . . ."

It is clear from the above that the court intended a decision on the merits. A reversal by this court, so that the trial court could change its order of dismissal to a decision for respondents, would. be an idle act. (Cf. *Haley* v. *L. A. County Flood Control Dist.,* 172 Cal.App.2d 285, 293 [342 P.2d 476].)

In *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 624 [213 P.2d 492], the court held that the trial court had erred in dismissing a declaratory relief complaint. Instead of reversing it, the court modified the judgment so as to declare that plaintiff was entitled to no relief. Where it is determined that plaintiffs, in a declaratory relief action, are not entitled to a declaration in their favor, the trial court should enter a judgment expressly embodying such determination and not enter a judgment of dismissal. (*Supra,* at p. 624.)

### *The Ordinance in Question Did Not Deny Appellants and Others Similarly Situated Due Process of Law*

■ This action concerns the welfare program commonly referred to as general assistance. The general assistance program is funded solely by county money, and is governed by rules and regulations adopted by the board of supervisors. (*Adkins* v. *Leach,* 17 Cal.App.3d 771 [95 Cal.Rptr. 61].) The statutory guidelines are contained in Welfare and Institutions Code sections 17000 and 17001. Section 17000 states that: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

Section 17001 provides: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county. . . ."

On December 21, 1971, the Board of Supervisors of Alameda County adopted Ordinance No. 71-109. The relevant portions of the ordinance are set forth in Article 13, which provides as follows:

"Article 13.

"Aid Payments

"Section 9-25.0. *Payment of Aid.* When eligibility has been established, general assistance may be issued in cash on a continuous basis according to established procedure.

"Sec. 9-25.1. *Utilization of Grant: Protective and Vendor Payments.* Each recipient has a right to manage his own affairs and to decide what use of his money, including the aid payment, will best meet his needs. When a recipient fails to plan and control the expenditures of the General Assistance payments in ways which provide for and protect the well-being of the recipient and/or his family, a protective payment or vendor payment shall be made.

". . . . . . . . . . . . . . . .

"Sec. 9-25.3. *Grants Rounded: Dollars and Cents.* Aid payments shall be rounded to the nearer dollar, with amounts of 50 cents or more rounded to the next higher dollar.

"Sec. 9-25.4. *Maximum Grant Schedule.* The simplified standard for a flat grant payment is determined by adding the verified rent payment, including utilities, or the maximum rent allowed, to the fixed amount for food, clothing, transportation and incidentals. The maximum grant schedule is:

"Housekeeping

| House-hold Size | Food, Clothing, Transportation, & Incidentals | Rent (Inc. Utilities) to Max. of | | Total Maximum Grant |
|---|---|---|---|---|
| 1 | $ 40 | $60 | (13) | $100 |
| 2 | 75 | 70 | (14) | 145 |
| 3 | 102 | 73 | (14) | 175 |
| 4 | 127 | 83 | (14) | 210 |
| 5 | 151 | 89 | (15) | 240 |
| 6 | 175 | 100 | (15) | 275 |
| 7 | 199 | 111 | (15) | 310 |
| 8 | 223 | 112 | (15) | 335 |
| 9 | 247 | 113 | (15) | 360 |
| 10 | 266 | 114 | (15) | 380 |

"NON-HOUSEKEEPING

| House-hold Size | Food, Clothing, Transportation, & Incidentals | Rent (Inc. Utilities) to Max. of | Total Maximum Grant |
|---|---|---|---|
| 1 | $ 60 | $50 | $110 |
| 2 | 117 | 64 | 181 |
| 3 | 148 | 77 | 225 |
| 4 | 176 | 79 | 255 |
| 5 | 200 | 80 | 280 |
| 6 | 216 | 84 | 300 |
| 7 | 230 | 95 | 325 |
| 8 | 244 | 96 | 340 |
| 9 | 258 | 102 | 360 |
| 10 | 272 | 103 | 375 |

"Sec. 9-25.5. *Room and Board: Single Recipient.* Room and board payments for single recipients are limited to the maximum basic grant for a single recipient in a housekeeping facility.

". . . . . . . . . . . . . . . . . . .

"Sec. 9-25.7. *Unrelated Persons in Household: Family Group Treatment.* Unrelated recipients residing in a common household shall have their grant determined in the same manner as a family group. Each person's case shall reflect an equal share of the maximum allowance and grant according to the size of the household."

Appellants attack respondents' system of determining need and computing grants on the basis of households or family groups. Ordinance section 9-25.4 sets out the maximum grant schedule for housekeeping and non-housekeeping persons. The amount of the grant varies with the household size. Section 9-25.7 concerns unrelated persons in the household, and provides that they shall have their grant determined as if they were a family group.

Respondents point out, when dealing with a multi-person household, the main impact of the family group treatment is on the allowance for

rent. Instead of doubling the payment for rent, there is only a slight increase. The allowance for "basic needs" (food, clothing, transportation and incidentals) for a household of two is nearly double over the grant for one person.

Appellants assume, without any citation of authority and without any reasoning to support their assumption, that section 9-25.7 creates a conclusive presumption that because a general assistance recipient lives in shared housing he has reduced expenses and is entitled to a lower grant.

Section 9-25.7 does nothing of the sort. It is simply a county determination of how much it will pay to those in need of general assistance. The ordinance is simply a matter of drawing lines and setting up classifications.

Appellants argue that they are being denied an opportunity to rebut the facts found by the regulations. However, the regulations are not a finding of facts but are the setting of somewhat arbitrary monetary figures. They are allocations of specific amounts of funds for specific purposes. Appellants imply that in determining needs and grants with the welfare program, some kind of individualized "need" determination on a case-by-case method is used. This is untrue. In this particular welfare program "needs" are determined on a general basis, either legislatively or administratively, not on an individual basis as in other welfare programs.

The cases cited by the appellants are inapplicable to the situation at bar. In virtually all these cases the appellants were deprived of some substantive vested right without a due process hearing.

For example, in *Bell* v. *Burson,* 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586], Georgia's Motor Vehicle Safety Responsibility Act provided that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident would be suspended unless he posted security for the amount of damages claimed by the aggrieved party. The statute excluded any consideration of fault or responsibility for the accident at a pre-suspension hearing. The court held that this statutory scheme violated appellants' procedural due process. "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 (1969); *Goldberg* v. *Kelly,* 397 U.S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the en-

titlement is denominated a 'right' or a 'privilege.' *Sherbert* v. *Verner,* 374 U.S. 398 (1963) (disqualification for unemployment compensation); *Slochower* v. *Board of Education,* 350 U.S. 551 (1956) (discharge from public employment); *Speiser* v. *Randall,* 357 U.S. 513 (1958) (denial of a tax exemption); *Goldberg* v. *Kelly, supra* (withdrawal of welfare benefits). See also *Londoner* v. *Denver,* 210 U.S. 373, 385-386 (1908); *Goldsmith* v. *Board of Tax Appeals,* 270 U.S. 117 (1926); *Opp Cotton Mills* v. *Administrator,* 312 U.S. 126 (1941)." (*Supra,* at p. 539 [29 L.Ed.2d at pp. 94-95].)

The cases cited above all relate to a failure to provide procedural due process; specifically, a failure to grant a proper hearing prior to the suspension or termination of a privilege or right. The Alameda County ordinance does not deprive the appellants of due process as there is no issue of fact to be determined, thus a hearing would accomplish nothing.

In *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580], the Supreme Court of California discussed, without deciding, the constitutionality of the Department of Social Welfare's regulation 44.133.5 (providing a "conclusive" presumption that, except for certain specified deductions and expenses, a recipient's male partner is supporting her). The court simply stated in passing that this conclusive presumption raised problems of procedural due process. (*Supra,* at pp. 483-484.)

The Alameda County ordinance does not make certain facts conclusive proof of another ultimate fact. The ordinance does not establish any presumption.

In *Knowles* v. *Butz,* 358 F.Supp. 228, two food stamp applicants brought suit seeking a declaratory judgment that a federal administrative provision dealing with the Food Stamp Program was unconstitutional. The challenged regulation provided that persons who share common living quarters and share the expenses for such quarters shall be considered a "household" for food stamp purposes. As a result, if any co-tenant was ineligible for food stamps, all of the co-tenants were ineligible.

The court did not decide the case on constitutional grounds but simply held that the regulation was inconsistent with the Food Stamp Program's statutory provisions.

It is apparent that appellants' arguments stem principally from the case of *Owens* v. *Parham,* 350 F.Supp. 598. Appellant in *Owens* v. *Parham* challenged the portion of the Georgia State Plan for the Aged, Blind and Disabled under which shelter and utility allowances are computed. The

plan made the AABD[1] recipient's shelter and utility allowance dependent on the number of persons in the household. The allowance varied when the household consisted of both eligible and non-eligible persons. Appellant contended that the schedule had the effect of establishing a conclusive presumption that when an AABD recipient resides in a household with non-eligible individuals, income is available from those individuals to help pay the shelter and utilities expenses and thus it violates due process.

The court agreed that a presumption was created by the plan, but found it was a rebuttable, not a conclusive presumption. The court held that a rebuttable presumption would not violate the due process clause, if the recipient were granted the opportunity in a hearing to show that there had been no decrease in the cost of need for shelter and utilities as the size of the household had increased. The cost of need was material in *Parham* as the amount of an AABD grant varies with the recipient's needs.

In the present case, the amount of the grant is a flat sum not based on individual need. There is no presumption that other persons in the household are or are not contributing a pro rata share of rent and under the county plan, such a factor would be immaterial and not affect the amount of the grant.

In *Adkins* v. *Leach, supra,* 17 Cal.App.3d 771, the court discussed the county's discretion in the furnishing of relief to indigent residents. (Appellant's attack really centers on the county's discretion to set the amounts which it will pay to indigents.) The court in *Leach* concluded that the judiciary had no authority to interfere with the administrative determinations of a board of supervisors with respect to the granting of county relief in the absence of a showing of fraud or arbitrary or capricious conduct. The court stated: "California's appellate courts have considered the language of Welfare and Institutions Code section 17000. This section is identical with a predecessor, section 2500 of the same code (see Stats. 1937, p. 1097).

"In *County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 . . . , the Supreme Court stated: 'The counties alone are charged with the duty of furnishing relief to indigent residents who are not otherwise supported. (Welf. & Inst. Code, § 2500; *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634 . . . .) No federal or state funds are provided for this purpose, and the counties are not required to grant any specific type of relief or to pay any specific amount of money. The administration of county relief to indigents, as distinguished from old age security and

---

[1]Aid to the Aged, Blind and Disabled.

needy blind assistance, is vested exclusively in the county supervisors who have discretion, without supervision by the state, to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief. [Citation.]'

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Both the statutes and the appellate courts have made it clear that counties *shall* support *resident* indigent persons (§ 17000) according to standards adopted by their boards of supervisors (§ 17001). And in the discharge of their statutory duty, the county supervisors have discretion 'to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief.' (*County of L. A.* v. *Dept. of Social Welfare, supra.*) The courts have no authority to interfere 'in the absence of a clear showing of fraud or arbitrary or capricious conduct.' (*Patten* v. *County of San Diego, supra.*)" (*Adkins* v. *Leach, supra,* at pp. 778-779.)

### The Alameda County General Assistance Ordinance Does Not Violate Appellants' Rights to Equal Protection of the Law

Appellants next contend that section 9-25.7 discriminates against the class of recipients living with other recipients or non-recipients. Citing *Shapiro* v. *Thompson,* 394 U.S. 618, 634 [22 L.Ed.2d 600, 615, 89 S.Ct. 1322], *Dandridge* v. *Williams,* 397 U.S. 471, 484 [25 L.Ed.2d 491, 501, 90 S.Ct. 1153], and *Ramirez* v. *Brown,* 9 Cal.3d 199 [107 Cal.Rptr. 137, 507 P.2d 1345], appellants contend that the classification created by section 9-25.7 impinges on constitutional guarantees and is subject to strict judicial review, and must be justified by a compelling governmental interest.

"[T]he United States Supreme Court has tended to employ a two-level test in reviewing legislative classifications under the equal protection clause. In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. (See *McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 . . . ; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 . . . .)

"On the other hand, in cases involving 'suspect classifications' or touching on 'fundamental interests,' the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. (See *Shapiro* v. *Thompson, supra,* 394 U.S. 618, 638 . . . ; *Sherbert* v. *Verner* (1963) 374 U.S. 398, 406 . . . ; *Skinner* v. *Oklahoma, supra,* 316 U.S. 535, 541 . . . ; see also *Developments in the Law—Equal Protection*

(1969) 82 Harv.L.Rev. 1064, 1120-1131.) Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." (*Westbrook* v. *Mihaly,* 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].)

In *Dandridge* v. *Williams, supra,* 397 U.S. 471, at page 485 [25 L.Ed.2d 491 at pp. 501-502], the Supreme Court of the United States settled the issue of whether or not classifications under welfare laws are "suspect classifications," or involve "fundamental interests" and therefore require the use of the "strict" equal protection test. The court held that in the area of economics and social welfare, a state does not violate the equal protection clause if the classification has some "reasonable basis." Though the court noted that the administration of public welfare assistance, in contrast with state regulations of business or industry, involves the most basic economic needs of impoverished human beings, it could find no basis for applying a different constitutional standard. (*Supra,* at p. 485 [25 L.Ed.2d at pp. 501-502]; see *Jefferson* v. *Hackney,* 406 U.S. 535, 546 [32 L.Ed.2d 285, 295-296, 92 S.Ct. 1724].)

*Shapiro* v. *Thompson, supra,* 394 U.S. 618 and *Ramirez* v. *Brown, supra,* 9 Cal.3d 199, are not in point. Those cases involved fundamental interests—one, the right to travel, and the other, the right to vote.

In this case, Alameda County has a "reasonable basis" for allowing increased sums for those recipients living alone than for those living in a group. Appellants themselves admit that there are economies in group living. As the court in *Dandridge* v. *Williams, supra,* 397 U.S. at page 485 [25 L.Ed.2d at pp. 501-502] pointed out: "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "

In *Owens* v. *Parham, supra,* 350 F.Supp. 598, 604 (a case relied on by appellants for their due process argument), the court considered the very same attack on the Georgia statute. The court denied appellant's equal protection attack, finding that the state had a "reasonable basis" for allowing greater shelter and utility allowances to AABD recipients living alone than to AABD recipients living with non-eligible individuals.

*The Ordinance in Question Does Not Violate Appellants'*
*Rights to Freedom of Association*

█ Appellants further argue that the challenged provision significantly impinges upon their rights to freedom of association. They base this right on the fact that they must choose between moving into unshared housing or foregoing their proper general assistance grant.

"While the freedom of association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition." (*Healy* v. *James,* 408 U.S. 169 at p. 181 [33 L.Ed. 2d 266, 279, 92 S.Ct. 2338].) The Supreme Court has never set forth any specific criterion which aids in determining when and when not freedom of association applies. The only method of determining the applicability of freedom of association to specific facts is by a case to case comparison.

Freedom of association is closely tied into freedom of speech and assembly. Virtually all these cases involve advocacy of both public and private points of view.

In *N. A. A. C. P.* v. *Alabama,* 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163], though the court stressed the vital relationship between freedom of association and privacy of one's associations, it was concerned with advocacy of public and private points of view. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas. is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." (*Supra,* at p. 460 [2 L.Ed.2d at p. 1498].)

In *Bates* v. *Little Rock,* 361 U.S. 516, 522-523 [4 L.Ed.2d 480, 485, 80 S.Ct. 412], the Supreme Court dealt with two Arkansas cities' statutes which required organizations operating in those municipalities to supply information as to officers, members, contributors, etc. In holding that those statutes would unjustifiably interfere with the NAACP members' freedom of association the court stated: "Like freedom of speech and a free press, the right of peaceable assembly was considered by the Framers of our Constitution to lie at the foundation of a government based upon the consent of an informed citizenry—a government dedicated to the establishment of justice and the preservation of liberty. U.S. Const., Amend. I. And it is now beyond dispute that freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States. *De Jonge* v. *Oregon,* 299 U.S. 353, 364; *N. A. A. C. P.* v. *Alabama,* 357 U.S. 449, 460."

The constitutional concept of freedom of association has been applied to cases involving nondisclosure of membership (*N. A. A. C. P.* v. *Alabama, supra*), to cases involving the furnishing of attorneys for group members (*N. A. A. C. P.* v. *Button,* 371 U.S. 415 [9 L.Ed.2d 405, 83 S.Ct. 328]), to cases involving the restriction of political groups on college campuses (*Healy* v. *James, supra,* 408 U.S. 169), to cases involving the attempt to regulate morality (*Griswold* v. *Connecticut,* 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; *Stanley* v. *Georgia,* 394 U.S. 557 [22 L.Ed. 2d 542, 89 S.Ct. 1243]).

Appellants' associations neither involve the right of speech, assembly or sexual expression. Nor do the county's actions herein involve any attempt to regulate or prohibit speech, assembly, sexual expression or even association. The only stated purpose of section 9-25.7 was an attempt to preserve county funds.

Appellants cite *Moreno* v. *United States Department of Agriculture,* 345 F.Supp. 310, in support of their freedom of association argument. That case, however, was appealed (*U.S. Dept. of Agriculture* v. *Moreno,* 413 U.S. 528 [37 L.Ed.2d 782, 93 S.Ct. 2821]) and the Supreme Court based its opinion on an equal protection analysis and mentioned freedom of association only in a footnote. The United States Supreme Court has not extended the doctrine of freedom of association to cases such as the one at bar.

From the discussion above, it is clear that the court below did not err when it denied appellants' writ of mandate. Section 9-25.7 neither denies persons due process of law, equal protection of law, nor their rights to freedom of association. Though the court's dismissal order is erroneous, reversal would be an idle act since appellants' substantive claim is legally untenable, and the only result would be the entry of a declaratory judgment adverse to them. (*Haley* v. *L. A. County Flood Control Dist., supra,* 172 Cal.App.2d 285, 293.)

Other issues need not be discussed in light of the fact that appellants' substantive claim is legally untenable.

The order is modified by striking therefrom the words "and that the Complaint be, and the same is hereby, dismissed" and inserting in lieu thereof "and that judgment on the complaint is rendered in favor of de-

fendants and against the plaintiffs." The remainder of the order is affirmed. Respondents to recover costs on appeal.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied August 15, 1974, and on August 7, 1974, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied October 2, 1974.