190 Cal.App.3d 25 (1987)
235 Cal. Rptr. 305
JOYCE NELSON et al., Plaintiffs and Appellants,
v.
BOARD OF SUPERVISORS OF SAN DIEGO COUNTY et al., Defendants and Respondents.
Docket No. D004711.
Court of Appeals of California, Fourth District, Division One.
March 10, 1987.
*27 COUNSEL
Colleen Fahey Fearn, Dennis E. Holz, Gregory E. Knoll, Anson B. Levitan, Peter M. Liss, Robert W. Ross, Richard M. Steiner, Richard A. Rothschild, Melinda Bird and Charles Wolfinger for Plaintiffs and Appellants.
Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Defendants and Respondents.
OPINION
KREMER, P.J.
Plaintiffs Joyce Nelson et al. appeal a judgment dismissing their lawsuit for mandate, injunction and declaratory relief after the superior court sustained without leave to amend the demurrer of defendants San Diego County Board of Supervisors et al. (County). Plaintiffs' lawsuit challenges as statutorily and constitutionally invalid the County's regulations terminating general relief payments to any recipient not obtaining a "valid address" within 60 days.[1] We reverse the judgment of dismissal and direct the superior court to enter an order overruling the County's demurrer.

I
In November 1985 plaintiffs filed a complaint against the County.
In their first cause of action for mandate under Code of Civil Procedure section 1085, plaintiffs alleged: Before June 1, 1985, the County denied general relief benefits to all eligible applicants and recipients without a valid address. Since June 1, 1985, the County has denied general relief benefits to otherwise eligible applicants and recipients who do not have a valid address within 60 days. The County's actions in not providing general relief benefits to homeless but eligible residents violate its statutory duties under Welfare and Institutions Code[2] section 17000 and plaintiffs' right to due *28 process and equal protection under California Constitution article I, section 7. Plaintiff Nelson is a homeless resident of the County who has lived in the County for 33 years, applied for general relief in June 1985, received only 60 days of general relief because she could not provide a rent receipt, and was unable to locate housing during such 60 days. Plaintiff Edmiston, a resident of the County for most of the past 41 years, is homeless, unable to work and must live on the streets. Her general relief has been limited by the County's fixed address requirements. Plaintiffs sought mandate directing the County to stop enforcing its challenged regulations and to provide general relief benefits to all County homeless residents improperly denied such relief.
In their second cause of action, plaintiffs sought to enjoin the County under Code of Civil Procedure section 526a from spending public funds in administering the general relief program in violation of its constitutional and statutory duties.
In their third cause of action, plaintiffs sought an injunction mandating the County to provide general relief benefits to all homeless County residents improperly denied such relief and a declaration the County's regulations denying general relief to homeless residents violate section 17000 and California Constitution article I, section 7.

II
The County demurred, asserting plaintiffs' complaint did not state facts sufficient to constitute a cause of action. Supporting its demurrer, the County cited Adkins v. Leach (1971) 17 Cal. App.3d 771 [95 Cal. Rptr. 61], as upholding as reasonable Monterey County's requirement general relief recipients provide addresses to prove lawful residence. Opposing the County's demurrer, plaintiffs asserted they adequately pleaded three causes of action for the County's violating its statutory and constitutional duties and plaintiff's correlative rights by denying and terminating all homeless residents from general relief for lack of a fixed address. Plaintiffs contended Adkins was no longer good law as to their statutory claims and did not purport to address any constitutional issue.
The superior court sustained the County's demurrer without leave to amend. Construing Robbins v. Superior Court (1985) 38 Cal.3d 199, 211 [211 Cal. Rptr. 398, 695 P.2d 695], as approving Adkins's holding a residence address requirement did not violate state law, the court ruled plaintiffs could state no cause of action to challenge the County's enforcing GRPG 90-200's address requirement. The court entered judgment dismissing plaintiffs' complaint. Plaintiffs appeal, contending the court erred in sustaining the County's demurrer.

*29 III
Plaintiffs make two arguments; first that the County's "valid address" requirement denies general relief benefits to the homeless and leaves them without any means of support in violation of the County's mandatory duty under section 17000 to aid its indigent resident population; and second that this court should decline to follow Adkins v. Leach, supra, 17 Cal. App.3d 771, as incorrectly reasoned and inconsistent with recent California cases interpreting the general relief statutes. We agree with both contentions.

IV
Section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."
(1) Under section 17000 general relief is "... the residual fund by which indigents who cannot qualify for and under any specialized aid programs can still obtain the means of life...." (Mooney v. Pickett (1971) 4 Cal.3d 669, 681 [94 Cal. Rptr. 279, 483 P.2d 1231].) Section 17000 imposes a mandatory duty upon the County. (Id. at p. 676.)
Section 17001 provides: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county."
The Legislature's charge to the counties is clear. Clear as well is that the counties do not possess unlimited discretion regarding those duties. In Robbins v. Superior Court, supra, 38 Cal.3d at page 211, the California Supreme Court held: "The case law addressing this provision has recognized that section 17001 confers broad discretion upon the counties in performing their statutory duty to provide general assistance benefits to needy residents. (See, e.g., Berkeley v. Alameda County Board of Supervisors (1974) 40 Cal. App.3d 961, 971 [115 Cal. Rptr. 540]; Adkins v. Leach (1971) 17 Cal. App.3d 771, 778-779 [95 Cal. Rptr. 61]; Patten v. County of San Diego (1951) 106 Cal. App.2d 467, 470 [235 P.2d 217].)
"However, there are clear-cut limits. `"This discretion ... can be exercised only within fixed boundaries. In administering general assistance relief the county acts as an agent of the state. [Citation.] When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations *30 must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. [Citation.]"' (City and County of San Francisco v. Superior Court (1976) 57 Cal. App.3d 44, 49 [128 Cal. Rptr. 712], quoting Mooney v. Pickett (1971) 4 Cal.3d 669, 679 [94 Cal. Rptr. 279, 483 P.2d 1231].)" (Robbins v. Superior Court, supra, at p. 211, fn. omitted.)
(2a) Appellants argue the County's policy barring aid to indigents who while without addresses are nonetheless residents of the County conflicts with the County's statutory duty. Appellants are correct.
Section 17101 provides: "The residence is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose."
Government Code section 243 provides: "Every person has, in law, a residence." Government Code section 244 provides in part: "In determining the place of residence the following rules shall be observed:
"(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.
"(b) There can only be one residence.
"(c) A residence cannot be lost until another is gained.
".... .... .... .... ....
"(f) The residence can be changed only by the union of act and intent."
Residence under Government Code section 244 has been construed to consist of the two elements of presence in the jurisdiction and intent to remain. (Smith v. Smith (1955) 45 Cal.2d 235, 239 [288 P.2d 497]; Fenton v. Board of Directors (1984) 156 Cal. App.3d 1107, 1112-1114 [203 Cal. Rptr. 388].) In Collier v. Menzel (1985) 176 Cal. App.3d 24, 31 [221 Cal. Rptr. 110], the court held homeless plaintiffs satisfied the statutory residence requirements for voter registration of fixed habitation and intent to remain.
The general relief statutes do not include a dwelling address as an element of residence. Section 17000 imposes a duty on the County to relieve and support its indigent residents; the statute does not exclude those indigent residents without addresses. In defining residence, section 17101 does not mention a dwelling address or otherwise exclude persons without addresses.[3] *31 Plaintiffs have alleged the County has violated its duty under section 17000 to provide general relief to eligible lawful residents. Plaintiffs' complaint is sufficient to survive demurrer.
(3) To be valid under the general relief statutes, the County's "valid address" regulations must be consistent, not in conflict with the statutes and reasonably necessary to effectuate the statutory purpose. (Robbins v. Superior Court, supra, 38 Cal.3d at p. 211; Mooney v. Pickett, supra, 4 Cal.3d at p. 679.) The County's regulations appear to be inconsistent with and in open conflict with section 17000's mandate to relieve and support lawfully resident indigent persons.
Further, we find nothing in this record to compel a finding as a matter of law the challenged regulations further any governmental interest necessary to effectuate the purposes of the general relief statutes.
Although a "valid address" may well be an objective criterion useful in proving residence, the record does not show the challenged regulations' "valid address" requirement is necessary as a matter of law to a determination of "true residence." Indeed, under the regulations' own terms, a "valid address" is not necessary to establish residence. The regulations require before issuance of any aid residence must be proved by documenting one of various specified criteria. Duration of residence is not a condition of eligibility. Proving a "valid address" is not required. A person otherwise eligible for general relief who satisfies the specified residence requirement receives aid for 60 days without providing a "valid address." However, general relief benefits are discontinued if the recipient does not provide a "valid address" within 60 days. Thus, providing a "valid address" is not part of the residence requirement; instead the challenged regulations exclude only those persons who have already established residence. Further, the "valid address" requirement appears inconsistent with the regulations' stated policy to assist otherwise eligible indigents who are physically present in the County, not in the County only temporarily not residents of another state or county, and evidence an intent to lawfully reside in the County.
Preventing fraud is a legitimate County interest. However, regulations may be invalid if they are more restrictive than necessary and extend not only to claimants suspected of fraud but also to nonsuspect claimants. (Robbins v. Superior Court, supra, 38 Cal.3d at p. 216.) In Collier v. Menzel, supra, 176 Cal. App.3d 24, Santa Barbara County presented no evidence homeless persons were more likely to commit voter fraud than persons who were not homeless. The court held: "Without such evidence, the status of homelessness raises no presumption that homeless persons are more prone to commit voter fraud than any other group. [Citation.]" (Id. at p. 34.) *32 Nothing in this record shows as a matter of law homeless general relief recipients are more likely than other general relief recipients to make fraudulent benefit claims. (Robbins v. Superior Court, supra, 38 Cal.3d at p. 216.) Further, the record does not show as a matter of law the absence of reasonable alternative methods to determine whether a person fraudulently claims residence. (Ibid.) Indeed, the regulations here delineate various methods for an applicant to prove residence other than by providing a "valid address." On this record we cannot say as a matter of law the challenged regulations are necessary to prevent fraud.
To the extent a purpose of the challenged regulations may be to encourage general relief recipients to obtain housing, the record does not show as a matter of law the possibility of finding such housing is reasonably realistic as opposed to merely theoretical. (Mooney v. Pickett, supra, 4 Cal.3d at pp. 679-681; Bernhardt v. Board of Supervisors (1976) 58 Cal. App.3d 806, 811 [130 Cal. Rptr. 189].)
Finally, the record suggests a financial motive may underlie the challenged regulations. (4) "Counties generally cannot escape their duty under section 17000 due to financial constraints...." (Clay v. Tryk (1986) 177 Cal. App.3d 119, 125, fn.4 [222 Cal. Rptr. 729].) "A county-established exclusion, from eligibility for General Assistance relief, may not be justified by substantial public cost to be anticipated in its absence...." (Bernhardt v. Board of Supervisors, supra, 58 Cal. App.3d at p. 811.) This record does not show as a matter of law the absence of other costcutting methods, not violating state statutes, to limit general relief payments to available financial resources. (Robbins v. Superior Court, supra, 38 Cal.3d at p. 217; Mooney v. Pickett, supra, 4 Cal.3d at p. 680.)
(2b) Plaintiffs have essentially alleged the County's regulations excluding from general relief eligibility those resident indigents unable to find "valid addresses" within 60 days, without regard to the practical impossibility of obtaining housing and without a showing such regulations are reasonably necessary to further a legitimate governmental purpose, "[leave] such individuals without any source of relief whatsoever  a result inconsistent with the language and purpose of section 17000 and other statutes establishing General Assistance relief." (Mooney v. Pickett, supra, 4 Cal.3d at p. 681.) We find such allegations sufficient to state causes of action challenging the County's regulations as violating the County's statutory mandates to provide general relief to indigent County residents.

*33 V
Relying on Adkins v. Leach, supra, 17 Cal. App.3d 771, the County contends that it may properly require general relief recipients to prove their addresses as objective criteria of whether they are truly lawful residents and that its regulations are valid and appropriate given society's fluid mobility. However, whatever its validity in 1971, later case law has undermined Adkins.[4]Adkins is not binding on this court now.
The plaintiff in Adkins challenged as unreasonable and arbitrary Monterey County's rule denying general relief applicants food vouchers or rent assistance until they furnished dwelling addresses. The court held: "Both the statutes and the appellate courts have made it clear that counties shall support resident indigent persons (§ 17000) according to standards adopted by their boards of supervisors (§ 17001). And in the discharge of their statutory duty, the county supervisors have discretion `to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief.' [Citation.] The courts have no authority to interfere `in the absence of a clear showing of fraud or arbitrary or capricious conduct.' [Citation.]
"Neither arbitrary nor capricious conduct (nor fraud) can reasonably be inferred from the pleaded requirement that immediate general relief is available `only after the needy person has an address which can be given to the Welfare Department as his place of residence.' Such a requirement is obviously reasonable. A county disbursing relief under the direction of section 17000 is fairly entitled to some objective criteria whether an applicant is truly a resident of the county. One in Adkins' position could otherwise collect his general relief and then pass on, perhaps to repeat his demand in another county. And in such cases the requirement of section 17006 ... that an applicant for general relief be investigated would obviously be frustrated by *34 payment before investigation to one with no county address." (Adkins v. Leach, supra, 17 Cal. App.3d at p. 779.)
The counties' latitude in administering general relief approved in Adkins has been qualified by Mooney v. Pickett, supra, 4 Cal.3d 669. (Clay v. Tryk, supra, 177 Cal. App.3d at p. 124.) Further, the superior court here mistakenly construed Robbins v. Superior Court, supra, 38 Cal.3d 199, as approving Adkins's holding a residence address requirement did not violate state law. "An appellate court's citation of an opinion does not necessarily mean adoption of all aspects of the court's reasoning in the cited opinion...." (Stocks v. City of Irvine (1981) 114 Cal. App.3d 520, 529 [170 Cal. Rptr. 724].) Robbins cited Adkins as authority for its statement case law had construed section 17001 as conferring "... broad discretion upon the counties in performing their statutory duty to provide general assistance benefits to needy residents...." (Robbins v. Superior Court, supra, 38 Cal.3d at p. 211.) However, in the paragraphs immediately following its citation to Adkins, the court in Robbins discussed the limits on such discretion expressed in Mooney v. Pickett, supra, 4 Cal.3d 669 and City and County of San Francisco v. Superior Court (1976) 57 Cal. App.3d 44 [128 Cal. Rptr. 712]. (Robbins v. Superior Court, supra, 38 Cal.3d at pp. 211-212.)
Moreover, the court in Adkins did not analyze the elements of residence under California law. Neither did the court analyze whether Monterey County's address requirement was in fact necessary to achieve its apparent purpose of assuring general relief applicants were "truly" residents or to further any other legitimate governmental interest.

VI
(5) Plaintiffs contend the County's regulations violate their rights to equal protection under the California Constitution by authorizing general relief aid to indigents with fixed addresses while denying such benefits to equally needy or even needier homeless indigents. Plaintiffs contend the County's assertedly discriminatory policy must be strictly scrutinized because the rights to shelter and subsistence should be deemed fundamental under the analysis of Serrano v. Priest (1971) 5 Cal.3d 584, 604-610 [96 Cal. Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]. Plaintiffs also assert under Harlow v. Carleson (1976) 16 Cal.3d 731 [129 Cal. Rptr. 298, 548 P.2d 698], and Frink v. Prod (1982) 31 Cal.3d 166 [181 Cal. Rptr. 893, 643 P.2d 476], the right of a welfare recipient to continued welfare benefits is fundamental. Finally, plaintiffs contend the County's regulations are invalid even under the rational basis standard of review because denying aid to the homeless is irrational, inconsistent with the goal of the general relief statutes and not in furtherance of any legitimate governmental interest.
*35 The County contends the California Supreme Court has not determined entitlement to general relief to be a fundamental right under an equal protection analysis. The County asserts general relief is only a statutory entitlement terminable at any time by the Legislature. The County further maintains its regulations further the legitimate public purpose under section 17006 of determining whether applicants for general relief are lawful County residents.
In sustaining the County's demurrer, the superior court made no specific findings as to plaintiffs' constitutional claims. Instead, the court relied on the holding in Adkins v. Leach, supra, 17 Cal. App.3d 771, a dwelling address requirement did not violate state law. Adkins does not purport to decide the constitutional issues raised by plaintiffs here.
Plaintiffs have essentially alleged the County's regulations create a classification unconstitutionally discriminating against indigent County residents without "valid addresses." We find such allegations sufficient to permit plaintiffs to proceed on their constitutional claims. However, in the absence of any trial court finding, at this time we need not address the merits of these constitutional claims.
The superior court should have overruled the County's demurrer.

DISPOSITION
The judgment of dismissal is reversed. The superior court is directed to enter an order overruling the County's demurrer. Appellants to have costs on appeal.
Wiener, P.J., and Lewis, J., concurred.

*36 EXHIBIT A

90-200 RESIDENCE
1. Policy
 The Board of Supervisors directed the Department of Social
 Services to establish residency criteria in order to assist
 indigent persons who:
 A. Are physically present in San Diego County;
 B. Are not in San Diego County temporarily;
 C. Are not residents of another state or county;
 D. Evidence intent to lawfully reside in San Diego County;
 E. Qualify for assistance in all other respects and
 cooperate with the General Relief program requirements.
 This policy is intended to allow greater access to the kinds
 of services the County provides by referral to programs such
 as mental health, physical health, drug and alcohol abuse,
 child support activities for responsible relatives, as well
 as income assistance through the General Relief program.
 Durational residence in San Diego County is not a condition
 of eligibility.
2. Proof of Residence
 In order to meet the residency requirement, before aid may
 be issued one of the following criteria must be documented.
 A. Rent Receipt and/or Utility Bill
 1) A 30-day rent receipt or utility bill in the
 applicant's name for a San Diego County address,
 which was issued within the past 30 days from the
 current date of application.
 B. Photo ID Card
 1) Must be issued within the past 12 months showing a
 printed San Diego County address.
 2) A valid ID card may be employment, government or
 student related.
 a. A student ID card must have been issued within
 the current semester/quarter, or
 b. For the last semester/quarter completed during
 periods of school vacation.
 3) An ID card obtained through a private concern does
 not meet this requirement.
-----------------------------------------------------------------
GR PROGRAM GUIDE ISSUE 90-200-2 Rev. 5/85
-----------------------------------------------------------------
 GRPG LETTER NO. 104
 0 190
*37 90-200 RESIDENCE
 C. Employment
 1) The applicant currently has a job in San Diego County
 and/or
 2) Is being treated as an "Aid Through First Payday."
 D. DSS Records
 1) Verification that the applicant was a public
 assistance recipient in San Diego County within the
 past three months.
 E. Probation or Parole Records
 1) An agent verifies that the applicant is restricted to
 San Diego County as a condition of probation or
 parole.
 F. Client's/Applicant's Declaration
 1) The client's affirmative answers to the "intent to
 reside" questions on the application forms when they
 have no address will suffice for intent to reside in
 San Diego County.
3. GR Clients/Applicants Without Addresses
 When residency is established, but the applicant does not
 have a valid address at the time of application, aid will be
 issued if the applicant is otherwise eligible.
 A. Initial aid will be issued according to GRPG 90-601.1.
 B. The applicant will be informed that a valid address must
 be obtained within 60 days; this will be noted on the
 notice of action.
 C. When the client returns for status report after the first
 30 days and still has no address, aid will be issued for
 the second 30 days, and they will be given a notice of
 action terminating their case at the end of the second
 30-day period if a valid address is not obtained. Their
 progress in obtaining an address will be checked by the
 ET and noted in the narrative.
 D. Clients without addresses who are otherwise eligible will
 be assigned to work projects and job search, and expected
 to cooperate if they are employable.
 E. If unemployable, these clients must provide a doctor's
 statement to that effect just as other GR applicants, or
 be converted to the employable program requirements of
 work projects and job search.
 F. Employable clients without addresses will be granted as
 aid type 92-A; unemployable clients without addresses
 will be
-----------------------------------------------------------------
GR PROGRAM GUIDE ISSUE 90-200-3 Rev. 5/85
-----------------------------------------------------------------
 GRPG LETTER NO. 104
 0 191
*38 granted as aid type 90-A. This "homeless" GR is repayable
 and may be granted only once within a twelve month
 period. Negative active code 055 will be used to close
 cases with no addresses after 60 days to identify those
 who may not be granted with no address within the next
 twelve months. If persons in this category reapply within
 twelve months but have an address, they will be granted
 if otherwise eligible.
 G. The address on the computer documents will be the address
 of the district office; all checks will be issued in the
 office for aid types 92-A and 90-A.
 H. Cases without addresses will be centralized with one
 worker in the GR granted bank.
4. Post Office Boxes and Commercial Mail Receiving Agencies
 A. GR clients may use a Post Office Box or Commercial Mail
 Receiving Agency to receive mail, including aid warrants,
 only when:
 1) The client's residence location is verified and
 documented in the case, and
 2) The ADC has reviewed and approved the reason for
 using a P.O. Box or Mail Agency.
 B. Appendix C provides a listing of Commercial Mail
 Receiving Agencies.
 C. Approval procedures are as follows:
 1) Verify residence. Methods of verification include:
 a) Obtain a recent rental, mortgage or tax
 statement, agreement or receipt with the client's
 name and residence address or residence location
 description, or
 b) Obtain a utility statement with the client's name
 and residence address or residence location
 description, or
 c) Make a home visit. Document in the case
 narrative.
 2) Determine from the client the reason for the request,
 and obtain verification. Acceptable requests, and
 method of verification, include the following:
 a) Mail delivery at residence is not available.
 Must be verified in writing or by phone with Post
 Office or the rental manager and documented in
 the case file.
-----------------------------------------------------------------
GR PROGRAM GUIDE ISSUE 90-200-4 Rev. 5/85
-----------------------------------------------------------------
 GRPG LETTER NO. 104
 0 192
*39 b) Temporary residence and no personal mail delivery
 is permitted (campgrounds and some motels and
 hotels). Must be verified in writing or by phone
 with the rental or campground manager and
 documented in the case file.
 c) Mail theft is common to the area and/or the
 client's residence mailbox. Must be reported to
 and verified by the Post Office and documented in
 the case file.
 d) The client's mailbox is damaged or absent and
 mail is undeliverable. Must be verified by the
 Post Office and documented in the case file.
 Approval is for one month only pending immediate
 replacement of the mailbox.
 3) Obtain ADC or District Chief approval/disapproval of
 the request.
 a) The EW will submit a gram, outlining the
 circumstances of the request and the verification
 obtained, to the ADC or District Chief.
 b) The ADC or District Chief will approve or
 disapprove the request utilizing the criteria of
 C.2) above and any other pertinent information.
 If approved, the ADC or District Chief will add
 to the gram the required review date, not to
 exceed three months. Disapprovals should have an
 explanation. The gram will be returned to the EW
 and retained in case file.
 c) If approved, the EW will make the necessary
 computer document address entries, computer
 "tic" for review and file the request gram with
 the computer document copy.
 d) If disapproved, the EW will advise the client of
 the disapproval and explanation and file the
 request gram in the "Other Verification" section
 of the case file.
 4) Review any approved request at least at the interval
 set by the ADC or District Chief by repeating 1), 2)
 and 3) above. Depending on the volume of requests and
 required reviews, the ADC or District Chief may give
 authority for continued approval to the Eligibility
 Supervisor.
5. Temporary Facility
 A. These are emergency shelters, providing lodging and food
 for short periods of time without charge. They provide
 for survival only, and are distinguished further by the
 fact that they provide no social case work services.
 Applicants staying in such shelters, if otherwise
 eligible, will be granted as "no address" cases.
-----------------------------------------------------------------
GR PROGRAM GUIDE ISSUE 90-200-5 Rev. 5/85
-----------------------------------------------------------------
 GRPG LETTER NO. 104
 0 193
*40 6. Case Management Shelter Programs
 A. These shelters are distinguished by the fact that they
 provide to the residents a program of some duration with
 specific social work case management services. These
 services may include various types of counseling and job
 preparation.
 B. Applicants in such shelters, if otherwise eligible, will
 be granted as other cases with addresses, using the
 address of the shelter. These cases will be granted for
 the purpose of issuing transportation and personal needs
 money to residents.
 The ET should check on the address of the shelter and the
 expected length of stay at each status report, and follow
 up with phone calls when any information is received
 indicating a move or other change in the client's
 circumstances.
 C. Residents of these shelters are considered to have all
 their needs met (income in kind, 90-403.1) except for
 transportation and personal needs. Even if the client
 made some voluntary contribution toward his lodging, the
 needs would be considered met because such shelters do
 not charge for meeting these needs.
7. Alcohol Recovery Homes
 A. Applicants residing in one of the County funded alcohol
 recovery homes listed in 90-500-B-1 are ineligible to GR
 for the duration of the residence. These facilities are
 fully County funded.
 B. This section will be expanded when other County funded
 treatment homes of various types are established.
 90-500-B-1 will be updated simultaneously.
-----------------------------------------------------------------
GR PROGRAM GUIDE ISSUE 90-200-5A Rev. 5/85
-----------------------------------------------------------------
 GRPG LETTER NO. 104
 0 194

NOTES
[1] The challenged regulations are portions of the County's General Relief Program Guide section 90-200 (GRPG 90-200). GRPG 90-200 is set forth in its entirety in the appendix to this opinion.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] The County cites no authority suggesting a dwelling address is an element of residence under California law. Adkins v. Leach, supra, 17 Cal. App.3d 771, does not so hold. Under Adkins, a dwelling address is at most only an objective criterion of residence, not an element of residence itself.
[4] It appears likely since Adkins was decided the demographics regarding homelessness have changed as well. A conservative estimate in 1984 put the number of homeless persons in the United States at 250,000 to 350,000 with a disproportionate share in the West. (U.S. Dept. of Housing & Urban Development, A Report to the Secretary on the Homeless and Emergency Shelters (1984) p. 7, cited in A Study of the Issues and Characteristics of the Homeless Population in Cal. conducted by the Cal. Dept. of Housing and Community Development with assistance from the Dept. of Mental Health and of Social Services (Apr. 1985) p. 9.) A statewide estimate in 1985 using the same definition of "homeless" put the number of homeless persons in California at 50,000 to 75,000. (Cal. Study, supra, at p. 9.) Other nationwide estimates range as high as 2.5 million. (Ibid.) Although obvious practical problems in counting the homeless make a precise count difficult, it appears the number of homeless persons has substantially increased since 1970 when the United States Census estimated their number nationwide to be 20,957. (Id. at p. 8.) Factors contributing to increased homelessness in California include shortages of housing affordable to low-income persons and the release of patients from state hospital beds in the move to deinstitutionalize the mentally ill. (Id. at pp. 1-3.)