[Civ. No. 36654. First Dist., Div. Four. June 1, 1976.]

JEFFREY BERNHARDT et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al.,
Defendants and Respondents.

## COUNSEL

David F. Chavkin, Robert Valencia and Steven M. Fleisher for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and Kelvin H. Booty, Jr., Deputy County Counsel, for Defendants and Respondents.

## OPINION

**RATTIGAN, J.**—An Alameda County ordinance, and administrative regulations adopted as "interpretations" thereof, purport to apply special standards of eligibility, for General Assistance welfare payments, to residents of the county described as "young adults." Jeffrey Bernhardt and Harvey Drobenare appeal from a judgment which upholds the validity of the ordinance and regulations and denies appellants judicial

relief from administrative action taken by respondents[1] pursuant to both. We hold that the ordinance and regulations are invalid because they are in conflict with the statutes of this state which control eligibility for General Assistance payments. We accordingly reverse the judgment with directions.

*Facts*

The record supports this recital of the facts which are undisputed:

At its 1971 regular session, the Legislature adopted an enactment to which the parties refer by its unofficial title as—and which we call—the Priolo Act. (Stats. 1971, ch. 1748, p. 3736 et seq.) Except for some purposes, which it recited, the enactment lowered the age of majority in this state from 21 to 18 years of age. (*Id.,* §§ 1 [p. 3736] 23 [p. 3746].) The stated exceptions did not include any purpose pertaining to the standards of eligibility for General Assistance payments as previously established in the provisions of the Welfare and Institutions Code hereinafter cited and quoted. (*Ibid.*) It was approved by the Governor on December 14, 1971. (Stats. 1971, ch. 1748, p. 3736.) In Alameda County Ordinance No. 71-109, adopted one week later, respondent Board enacted a comprehensive revision of the County's General Assistance program and provided that it was to become effective February 1, 1972.

The Priolo Act took effect on March 4, 1972, by operation of law. (Stats. 1971, vol. 1, p. A-3.) Thereafter, and by way of implementing Ordinance No. 71-109, respondent Director adopted regulations which provided in pertinent part—notwithstanding the contrary effect of the act—that "[f]or the purposes of the G. A. Program [i.e., of the County's General Assistance program] a minor is considered to be anyone under twenty one years of age." This provision was immediately challenged in an action brought against the Director in the Alameda County Superior Court. The result was a judgment requiring the County to recognize 18 years as the age of majority for purposes of its General Assistance program. (Baggs v. McKay, Alameda County Superior Court No. 422632.)

---

[1]"Respondents" on the appeal, who were respondents and defendants below, include the County of Alameda (hereinafter "County"), its board of supervisors ("Board"), the individual members thereof, and the director of its human resources agency ("Director" and "Agency," respectively).

The judgment was entered on April 26, 1972. In Alameda County Ordinance No. 72-35, adopted eight days later, respondent Board purported to establish a special program of General Assistance for applicants who were 18, 19 or 20 years of age and whom the ordinance defined as "young adults." Regulations implementing Ordinance No. 72-35 (and styled as "interpretations" thereof) were adopted by the Director in due course. The ordinance and regulations are reproduced in the appendix which appears at the end of this decision, and which is incorporated herein for all purposes. (The above-recited history of Ordinance No. 72-35, and of the litigation which prompted its enactment, are factually stated in it. See appendix [Ordinance, § II].)

In May and June 1972, appellants Bernhardt and Drobenare respectively applied to the Agency for General Assistance payments. When each applied, he was a "young adult" as defined in Ordinance No. 72-35 and in the regulations; Bernhardt was 20 years of age, Drobenare was 19. The Agency finally denied both applications, as did respondent Director in the course of administrative review of both. Each appellant was a resident of the County and was indigent. Each met all standards of eligibility for General Assistance payments in these respects, but was denied payments upon the sole basis that he did not meet the "exceptional circumstances" criteria of eligibility established in the ordinance and regulations for "young adults" only. (See appendix [Ordinance, § 9-31.2, subd. (c); Regulations, § 9-31.2, *passim*].)

### The Present Action

Having exhausted their administrative remedies, appellants commenced the present proceeding in the format of a class action brought upon behalf of themselves and others similarly situated. In the first of two causes of action stated in their "Petition For Writ Of Mandate And Complaint For Declaratory Judgment," they sought a writ of mandate which would compel respondents to grant their applications upon the ground that Ordinance No. 72-35 was invalid because it violated state laws regulating the administration of General Assistance relief by counties. In the second cause of action, they alleged their entitlement to a judgment declaring that the ordinance was invalid for the same reason and upon constitutional grounds.

The trial court issued an alternative writ of mandate. Respondents filed a return thereto and an answer to the petition and complaint. After

a nonjury trial of the issues thus joined, the court filed findings of fact and conclusions of law. Among the latter, the court stated its determinations that the proceeding was properly maintainable as a class action but that neither Ordinance No. 72-35 nor the regulations violated pertinent state laws, that neither was constitutionally invalid, and that appellants were to be denied relief accordingly. A judgment was entered, reiterating these determinations and denying appellants relief in all the respects prayed in their petition and complaint. This appeal followed.

### Discussion And Disposition

Ordinance No. 72-35 was enacted, and the implementing regulations were adopted, pursuant to the provisions of Welfare and Institutions Code sections 17000 and 17001.[2] Section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." Section 17001 states: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county."

■ Appellants contend that section 17000 imposes upon respondent County a mandatory duty to support *all* indigent persons lawfully resident therein, and that it cannot impose additional standards of eligibility which are neither established nor authorized by the Legislature. Respondents assert that the County's exclusion of "young adults" from eligibility, in the absence of "exceptional circumstances" as provided in the ordinance and regulations, is a permissible exercise of the discretionary authority granted the County in section 17001; that this is true because it has not undertaken to exclude an entire class of "young adults" from eligibility, but has established "a rational program with individualized determinations"; and that it may do this so long as it acts within the limits of pertinent constitutional provisions.

The real substance of respondents' arguments is then addressed to the validity of Ordinance No. 72-35, and of the implementing regulations,

---

[2]Unless otherwise indicated, all statutory references hereinafter are to the Welfare and Institutions Code.

against various constitutional objections.[3] Except in passing, we do not find it necessary to reach the constitutional issues thus raised by respondents; we are persuaded that the ordinance and regulations are invalid upon the essential basis that they conflict with section 17000 to an extent which section 17001 does not permit, and with the Priolo Act as well.

This result is required by *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231], where the Supreme Court invalidated, for conflict with section 17000, a county regulation which purported to deny nonemergency General Assistance benefits to "employable single men" who were otherwise eligible for payments. (*Id.,* at pp. 671, 675-681.) Reviewing present section 17000 from its initial legislative origins and through the full course of its history, the court observed that it and its predecessor statutes had expressly imposed upon a county the *mandatory* duty to provide General Assistance relief to "all" indigent persons residing in the county, and that the courts had repeatedly interpreted the statutes as reaching *all* such persons without pertinent exception. (*Id.,* at pp. 676-678.)

Section 17001 does not permit a local exclusion from the thus-unlimited reach of section 17000, because the discretion it confers upon a county "can be exercised only within fixed boundaries" which are consistent with section 17000. (*Mooney* v. *Pickett, supra,* 4 Cal.3d 669 at pp. 678-679.) ■ A county-established exclusion, from eligibility for General Assistance relief, may not be justified by substantial public cost to be anticipated in its absence.[4] (*Id.,* at p. 680.) "Employable single men" may not be denied eligibility by such exclusion, upon the theory that their "employability" is an economic "resource" which the county may weigh against their indigence, because it is no more than a "theoretical" resource whose recognition does not meet the realities at which section 17001 is directed. (*Id.,* at pp. 679-681.)

---

[3] Respondents thus contend that the ordinance and regulations are constitutionally valid because they violate neither due process, nor equal protection, nor the "right of interstate travel." They impart only superficial significance to the effect of sections 17000 and 17001, which (as will appear) we consider decisive.

[4] Respondents do not urge in their argument that Ordinance No. 72-35 may be justified, under section 17001, as a control upon high public cost in the administration of General Assistance relief. The *Mooney* holding to the contrary is nevertheless pertinent because such control is the purpose of the ordinance according to its express terms. (See appendix [Ordinance, § II].)

 The ordinance and regulations invoked in the present case are not materially distinguishable from the regulation which was invalidated in *Mooney* for the reasons stated above. As the *Mooney* regulation denied eligibility for General Assistance relief to a male applicant who was found from "individualized determination" to be unmarried and "employable," the present ordinance and regulations reach the same result upon an "individualized determination" that a particular "young adult" might be referred to his parents for support (and who indeed might, in some cases, be bundled away to them).

It is clear that respondent County has viewed prospective parental support of a "young adult" as an economic "resource" which may be taken into account in determining his eligibility for General Assistance relief. Under the general law of this state, however, the parents of an adult have a legal responsibility to support him only if he is "in need . . . [and] . . . unable to maintain himself by work," and then only "to the extent of their ability." (Civ. Code, § 206.) Under the Uniform Civil Liability for Support Act, parents are liable for the support of "a son or daughter," over the age of 18, who is *"incapacitated* from earning a living and without sufficient means." (Italics added.) (Civ. Code, § 241, subd. (d), as amended by the Priolo Act. [Stats. 1971, ch. 1748, § 25.5, p. 3747.] See also Civ. Code, §§ 242-243.)

The present ordinance and regulations do not take into account any of these contingencies upon which the legal *duty* of parents, to support an adult child ("young" or otherwise) depends. It is equally clear, therefore, that respondent County has adopted both in reliance upon an economic "resource" which is theoretical rather than real. As *Mooney* tells us with respect to theoretical "employability," such reliance is not permitted by sections 17000 and 17001. (*Mooney* v. *Pickett, supra,* 4 Cal.3d 669 at pp. 679-681.)

The patent objective of the ordinance and regulations is to compel or encourage needy "young adults," who reside in Alameda County, to "return" from there to the home of their parents. (See appendix [Ordinance, § 9-31.2, § I; Regulations, *passim*].) Whether or not effective *deportation* may be constitutionally accomplished in the name of theoretical *dependency,* sections 17000 and 17001 do not permit a county to bring it about. As in *Mooney,* the ordinance and regulations leave the needy but unexceptional "young adult" without "any source of relief whatsoever—a result inconsistent with the language and purpose of section 17000 and other statutes establishing General Assistance relief."

(*Mooney* v. *Pickett, supra,* 4 Cal.3d 669 at p. 681.) For this reason, both are invalid.

In one of their constitutional arguments, which we do not otherwise reach (see the text at fn. 3, *ante*), respondents suggest that the ordinance and regulations validly invoke the *historical* majority age of 21 years. The suggestion is essentially an exercise in nostalgia which the Priolo Act does not permit. (See stats. 1971, ch. 1748, § 1, p. 3736.) It demonstrates that the ordinance and regulations, defining "young adults" as something other than real ones, are fatally inconsistent with the Priolo Act (*ibid.*) and are invalid for that additional reason.

The judgment is reversed. The cause is remanded to the trial court with directions to enter a judgment granting relief consistent with the views expressed herein.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied July 1, 1976, and respondents' petition for a hearing by the Supreme Court was denied July 28, 1976.

---

APPENDIX

The ordinance provides in pertinent part:

"Ordinance No. 72-35

"An ordinance adding article 16 to chapter 1 of title 9 of the Ordinance Code of the County of Alameda relating to general assistance for the relief and support of needy persons

"The Board of Supervisors of the County of Alameda, State of California, do ordain as follows:

"SECTION I. Article 16 is hereby added to Chapter 1 of Title 9 of the Ordinance Code of Alameda County to read as follows:

"Article 16

"Young Adults

"Section 9-31.1. Definitions. A 'young adult' is a resident unmarried person aged 18, 19, or 20. If a person aged 18, 19, or 20 has been married, but the marriage has been

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

annulled, then such person is considered unmarried; if the marriage of such person has been otherwise terminated, such as by divorce or dissolution, then such person is considered married. . . .

"Section 9-31.2. Young Adults: General Assistance Program: Any and all other provisions of Title 9 to the contrary notwithstanding, the following provisions set forth the General Assistance program for a young adult:

"a. In the best interests of the young adult, he should return to his parent's state or county of residence so as: to enable the parent to fulfill his parental obligations with facility; to provide for the young adult the assistance his parent would normally render, including the opportunity to give moral and financial support and counsel; to strengthen family relationships; and to contribute to the security of the young adult, through family solidarity and through guidance and planning, which positive factors exist regardless of any legal liability to provide financial support. Accordingly, a young adult shall receive only the General Assistance aid or benefits as are provided in this Article 16.

"b. General Assistance aid or benefits as provided for other adults, together with transportation costs if necessary, may be given to a young adult on an emergency basis for a period not to exceed thirty (30) days, to sustain him temporarily and to enable him to return to the residence of his parent.

"c. In exceptional circumstances, where it has been verified by the Department not to be in the best interests of the young adult to be returned to his parent's residence, then the young adult may be granted General Assistance on the same basis as any other adult. Such circumstances may exist, for example, when the parents are dead, incarcerated or hospitalized; when the young adult has been separated from his parents for a significant period of time without having received any financial support from those parents; when the young adult has been a ward of a court for a significant period of time; or when such return might subject the young adult to physical or psychological abuse.

"SECTION II. It is necessary for the immediate preservation of the public peace, health and safety that this Ordinance take effect immediately upon its passage, the facts constituting such necessity being that the County adopted its new General Assistance Program in Ordinance No. 71-109. That Ordinance provided for a program for the young adults, and the County budgeted the funds required to support said program as therein described. The Alameda County Superior Court has indicated in the course of pending litigation that the Court construes that Ordinance to require a different program for the young adults than the one intended by the Board in adopting the Ordinance; and the Court's construction would require the expenditure of vast sums of public money, contrary to the intention of this Board. Accordingly, this Ordinance must take effect immediately to prevent such undesired expenditure. . . ."

As pleaded by respondents, the administrative "interpretations" adopted by the Director read:

"*INTERPRETATION*

"ARTICLE 16

"9-31.2 If a young adult indicates willingness to return to his parents' state or county of residence, the worker shall contact the young adult's parents as well as the Welfare agency in the parents' state or county of residence to verify the parents' residence and ability and willingness to provide transportation for return of the young adult.

If the parents of the young adult are unable or unwilling to provide transportation, the worker shall determine whether circumstances (e.g., illness of the young adult) warrant returning the young adult at Alameda County's expense. The final decision to return young adults to the place of their parents' residence shall be the responsibility of the Assistant Welfare Director. No more than thirty days emergency General Assistance may be paid to young adults pending their return.

If the young adult refuses to return to the place of his parents' residence, the worker may refer him to available employment, the runaway center and any other appropriate resources. Aid shall not be granted unless the young adult meets the criteria outlined below.

"9-31.2 Examples of unusual circumstances which may warrant granting of General Assistance to young adults are:

(A) There is verification of physical separation of the young adult from parent or parents for an extended period of time and verification that the parent or parents have provided no support during that time. (Acceptable verification of these facts would be written notarized statements from the parents or written verification by a social agency; e.g., Welfare Department in the locality where the parents reside);

(B) There is verification that the young adult was a ward of the court until reaching age 18 at which time wardship was terminated;

(C) There is verification that return to the home of parents would not be in the best interest of the young adult because of potential physical abuse. (Acceptable verification of this type of situation would be a police report or probation or court report confirming physical abuse or molestation of the young adult by parent or parents.)

(D) There is verification that return to the home of parents would not be in the best interest of the young adult because of psychological problems. (Acceptable verification of this type of situation would be a psychiatrist's report confirming that return to the home situation would be seriously detrimental to the young adult's mental health. Any statement of this kind should include specific reasons why the home situation is detrimental and should indicate the nature of the young adult's psychological problems and what treatment is indicated).

(E) Verification of the death of the young adult's parents or verification of the inability of the parents to provide support and parental guidance because of physical or mental disability. (Acceptable verification of this type of situation would be a copy of the death certificate of a parent (or parents) or verification that a parent (or parents) is confined to a hospital for an undetermined period of time.)

Examples of circumstances which do *not* warrant granting of General Assistance to young adults are:

(A) The young adult has lived in the home of parents until recently and has been supported by them but has decided to move out on his own and assert his/her independence;

(B) The young adult has had a disagreement with parents and has decided to relocate in order to avoid contact with parents and to avoid parental control;

(C) The young adult does not feel comfortable in the home or geographic locality of his parents because they do not agree with his views or share his standards;

(D) The young adult has come to Alameda County to obtain employment or education and chooses not to request support or help with education from parents.

It is clear from the examples given above that only *truly* unusual circumstances may warrant granting of General Assistance to young adults.

The following are the steps that shall be followed before aid is granted to a young adult:

(1) Worker will take application and obtain all pertinent information related to the unusual circumstances which may warrant granting of aid;

(2) Worker will obtain all necessary verification of unusual circumstances which may warrant granting of aid;

(3) Case record with necessary recording, documentation and verification will be submitted to Assistant Welfare Director for review;

(4) Assistant Welfare Director will note in writing that case has been reviewed and that circumstances warrant granting of aid."