[No. A029922. First Dist., Div. Two. Feb. 3, 1986.]

EVERETT CLAY, Plaintiff and Appellant, v.
DANIEL TRYK, as Director, etc., Defendant and Respondent.

**COUNSEL**

Stephen R. Nielson for Plaintiff and Appellant.

Cameron L. Reeves, County Counsel, and Douglas H. Calkins, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**SMITH, J.**—Appellant Everett Clay appeals from a judgment denying a writ of mandamus to compel the award of welfare benefits.

Clay applied for general relief benefits on November 4, 1983. The welfare department found him eligible for some general relief, but denied him housing and utility benefits pursuant to Lake County General Relief Regulation section III, subdivision B, subsection 5. The regulation refuses housing benefits to persons in shared housing arrangements where not all members of the household are entitled to general relief. The welfare department upheld the initial decision after county hearings in January 1984. On April 17,

1984, the Lake County supervisors amended the regulation to exclude landlord-tenant relationships from the shared housing restriction.

Clay subsequently filed a petition for writ of mandamus. The superior court affirmed the decision of the welfare department, holding that there was no landlord-tenant relationship in Clay's situation and thus that Clay was ineligible for benefits. Clay filed a timely notice of appeal December 3, 1984.

The material facts are not in dispute. Clay lived in the mobilehome of Mr. and Mrs. Medicas for approximately four and one-half years prior to his application for general relief benefits. Clay had his own bedroom but shared the kitchen, bathroom, and other areas of the home with the Medicases. During those four and one-half years Clay resided at other locations for a total of approximately three months.

Clay's original agreement with the Medicases provided that Clay would perform certain household chores in exchange for room and board from the Medicases. On April 19, 1983, Clay suffered a serious head injury. Since that time Clay has been unable to pay the Medicases for his shelter by performing chores as he did prior to his injury.

The regulation in question here currently reads: "Housing and/or utility payments will not be allowed in 'shared housing' arrangements unless all members of the household meet the County General Relief eligibility standards." "Shared housing" does not include situations where an established or proven landlord-tenant relationship exists.

■ ■ ■ ■ Applying this regulation to Clay's facts the superior court determined that Clay's relationship to the Medicases was that of a "lodger," i.e. he had a rent obligation, but did not have exclusive possession of the premises he occupied.[1] The court concluded that this did not qualify as a

---

[1]Although the word "lodger" has more than one meaning the superior court relied on 42 California Jurisprudence Third's characterization of "lodger" in identifying Clay's relationship with the Medicases. That source states, "The distinction between a tenant and a mere lodger or roomer is that the latter occupies a room or portion of a tenement which remains under the control or general occupancy of the person letting, and acquires no interest in the property itself. A tenant has exclusive legal possession of the premises and is responsible for their care and condition, whereas a lodger has only a right to use the premises subject to the landlord's retention of control and right of access. He is a mere licensee, not a tenant. He has merely a *privilege to occupy under the owner—a right to use without actual or exclusive possession*, which remains in the owner." (42 Cal.Jur.3d, Landlord and Tenant, § 9, p. 27.)

While the superior court did not explicitly state that Clay had a rent obligation to the Medicases, it can be inferred that the court made this finding. The court concluded that Clay was not a tenant solely because of the character of his possession, never questioning his

landlord-tenant relationship for the purposes of the Lake County General Relief Regulation section III, subdivision B, subsection 5. Clay appeals the superior court's construction of "landlord-tenant relationship."

## APPEAL

Clay contends on appeal that since he is a lodger and obliged to compensate the Medicases for the value of the premises he occupies, the county abused its discretion by denying him housing relief benefits. Specifically he argues that (1) the Lake County housing and utility relief regulation is inconsistent with Welfare and Institutions Code section 17000 which requires counties to support indigent residents,[2] and (2) the narrow interpretation of "landlord-tenant" violates various rules of statutory construction. Lake County responds that the only issue on appeal is whether the trial court's findings are supported by substantial evidence and that it has met the above mentioned duty to provide for indigents.

## I

■ Because the issues involved in Clay's appeal are legal, we may independently review the superior court's conclusion of law. (*Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 611 [200 Cal.Rptr. 575].) The county maintains that we are bound in this appeal by the substantial evidence standard of review, but they mistakenly assume the issues involved are factual.

Actually Clay makes two contentions on appeal, both of which concern the trial court's legal conclusions. Clay takes issue with the court's legal classification that his arrangements with the Medicases are outside the scope of the landlord-tenant exception to the shared housing exclusion. He does not question the court's specific findings as to the factual nature of the arrangements. Clay's other argument is that the county's interpretation of its regulation does not meet its duty under section 17000 to support indigent persons. This argument is a legal issue of statutory interpretation. Thus, the

obligation to pay rent. In addition, the opinion acknowledged that Clay and the Medicases originally agreed to have Clay do chores, and that after the injury he "had no ability to pay the Medicases."

One further reason to infer that the superior court found that Clay was obliged to pay rent is that "lodger" commonly refers to "persons who hire premises." (See 42 Cal.Jur.3d, *op. cit. supra,* p. 26 [referring to "lodgers" as "persons who hire dwelling[s]"; see also Civ. Code, § 1940, subd. (a) et seq. [includes "lodgers" under "persons who hire dwelling units"].)

[2]All subsequent section references herein are to the Welfare and Institutions Code unless otherwise indicated.

Section 17000 reads, "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated . . . ."

substantial evidence test is inappropriate and we may independently consider the legal issues here.

## II

Lake County restricts housing and utility benefits on the basis of whether an applicant in "shared housing" is in a technically defined "landlord-tenant relationship." ■ Clay argues that the exclusion is inconsistent with section 17000. We agree.

Section 17000 requires counties to support "all incompetent, poor indigent persons, and those incapacitated by age, disease or accident." ■ Under section 17001[3] counties have "broad discretion to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief." (*City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 49 [128 Cal.Rptr. 712].) ■ Some cases have stated that the court cannot interfere with the county's discretion " 'in the absence of a clear showing of fraud or arbitrary or capricious conduct. . . .' " (*Adkins* v. *Leach* (1971) 17 Cal.App.3d 771, 778-779 [95 Cal.Rptr. 61], quoting *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217].)

This latitude in administering relief was qualified in *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231]. ■ The court emphasized that the county's discretion "can be exercised only within fixed boundaries. In administering General Assistance relief the county acts as an agent of the state. [Citation.] . . . [T]he agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. (Gov. Code, § 11374.)" (*Id.,* at p. 679.)

■ California courts have found regulations not to be within the allowable boundaries when they exclude an entire class of people, some of whom would be eligible for aid if evaluated individually. (*Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679.) These exclusions amount to irrebuttable presumptions that members of the classes are not needy. ■ In *Mooney,* the California Supreme Court concluded that welfare regulations which excluded mentally and physically "employable" men from general relief created an impermissible irrebuttable presumption that these men were not in need of assistance, in violation of section 17000. (*Id.,* at p. 681.) Similarly, a regulation imposing strict eligibility requirements on 18- to 20-year-olds,

---

[3]Section 17001 reads, "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county."

requiring most of this group to live with their parents, was invalidated in *Bernhardt* v. *Board of Supervisors* (1976) 58 Cal.App.3d 806 [130 Cal.Rptr. 189]. The *Bernhardt* court reasoned that the county in question relied "upon an economic 'resource' which is theoretical rather than real. As *Mooney* tells us with respect to theoretical 'employability,' such reliance is not permitted by sections 17000 and 17001. (*Mooney* v. *Pickett, supra,* 4 Cal.3d 669, at pp. 679-681.)" (*Bernhardt, supra,* 58 Cal.App.3d 806, 812.) ■ ■ ■ ■ Both these cases rejected presumptions based upon factors which do not necessarily correlate with actual need.[4]

■ In its interpretation Lake County creates a situation analogous to those in *Mooney* and *Bernhardt*. Applicants must have exclusive possession of their living quarters in addition to paying rent in order to qualify for housing benefits. An entire class of persons, persons who share possession of their shelter, are therefore denied housing benefits even though individually some members of this class have unmet housing needs. The county relies on a "theoretical economic resource," assuming that persons who share legal possession of premises can be supported by their housemates. As in Clay's situation this irrebuttable presumption is not always justified. In fact, unrelated housemates are often unwilling to support one another. Lake County's assumption can actually hinder the goal of efficient public assistance, since it is generally more economical to share housing than to live alone.

The county argues that the Lake County shared housing provision is similar to a provision which was upheld on constitutional grounds in *Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961 [115 Cal.Rptr. 540]. In *Berkeley* the court discussed a regulation that computed the grants of "unrelated general assistance recipients residing in a common household" in the same manner as a "family group." (*Id.,* at p. 964.) Members of family groups received smaller per person allowances than individual recipients. (*Id.,* at pp. 966-968.) Although the members of the common households were entitled to less relief than they would have been had each been living alone, the regulation was held to be in accord with due process

---

[4]Counties are also required to establish and provide adequate levels of assistance. (See *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d 44, 49.)

Counties generally cannot escape their duty under section 17000 due to financial constraints. The court in *Mooney* stated, "We are aware of the financial difficulties which attend present welfare programs on local, state and national levels. This court, however, is not fitted to write a new welfare law for the State of California, and while the Legislature addresses itself to that task it remains our task to enforce the existing law. . . . [T]he county can surely find many ways which do not violate state statute in which it can limit General Assistance payments to the financial resources available." (*Mooney* v. *Pickett, supra,* 4 Cal.3d 669, 680; accord *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 217 [211 Cal.Rptr. 398, 695 P.2d 695].) The county there alleged that the court's decision would double the cost of general assistance.

of law. (*Id.*, at p. 974.) The court explained that the provision did not create an irrebuttable presumption since it did not, "make certain facts conclusive proof of another ultimate fact." (*Id.*, at p. 969.) Rather, the court concluded the regulation was a general determination of need, which is acceptable under sections 17000 and 17001. (*Id.*, at pp. 968-971.)

Unlike the provision in *Berkeley*, however, the Lake County regulation allows *no* housing benefits for persons in the specified housing arrangement. Presuming that the applicant need not pay for his shelter, the Lake County regulation eliminates, not merely reduces, the housing allowance. This differs from the regulation in *Berkeley*, which allowed some benefits and only delineated *need* levels for persons in certain situations. Lake County's zero housing allotment is not an allowance for basic needs.[5]

No California case has discussed the validity of a welfare regulation that completely excludes persons in shared housing from receiving housing aid. One federal case, however, *Soave* v. *Milliken* (S.D. Mich. 1980) 497 F.Supp. 254, discussed a Michigan regulation which denied shelter allowances to persons "living in the household of another." (*Id.*, at p. 256.) The case granted a preliminary injunction against enforcement of the provision on due process grounds. The court emphasized, "the [Michigan] policy operates by use of an 'irrebuttable presumption' that persons living within the household of another can be financially provided for by the person in whose household they live. . . . The fact that a general assistance recipient is sharing living space with a person who owns or leases the house or apartment in which they live seems to have no rational relationship to the actual need of the recipient." (*Id.*, at pp. 258, 259.) The court concluded that such a restriction does not further the goal of providing aid to the needy. (*Id.*, at p. 260.)

The principles articulated in *Soave* apply with equal force to the Lake County restriction. The Lake and *Soave* regulations are similar in that both create a presumption that persons who share housing can be supported by their housemates.[6] Thus, as in *Soave*, the Lake County restriction does not

---

[5]If the provision were viewed as a need determination it would be clearly inadequate. (See *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d 44, 49.)

[6]The *Soave* regulation differed from the one in Lake County in that it did not exempt landlord-tenant relationships from its shared housing exclusion. An amendment like Lake County's strictly construed landlord-tenant provision would not have cured the *Soave* regulation, however. The specific plaintiffs mentioned in *Soave* appear to have been lodgers. They all lived in rooms in other people's houses and it was unlikely that they had exclusive possession of their living quarters. This was particularly true in regard to one plaintiff who lived in a friend's mobilehome. (*Soave* v. *Milliken, supra,* 497 F.Supp. 254, 256.) As "lodgers," the *Soave* plaintiffs would not have been subject to a strictly construed landlord-tenant exception.

further the goals of public assistance because it denies benefits to persons in need.

The Lake County regulation, as interpreted, creates an irrebuttable presumption that persons who share possession of housing with people who are ineligible for general relief need not pay for their housing. This presumption does not further the goals of public assistance. For these reasons the provision, as interpreted, violates section 17000.

### III

█ Having resolved that the welfare department's narrow interpretation of the regulation is invalid, the question becomes whether the regulation can be interpreted in a way that is consistent with state law. A broader interpretation of "landlord-tenant" is a legitimate alternative to the superior court's interpretation because the broader interpretation comports with various principles of statutory construction. It is, therefore, preferable to the narrow definition which would invalidate the regulation.

The specific provision being interpreted here states: " 'Shared housing' does not include situations where an established or proven landlord-tenant relationship exists." The superior court interpreted this language in its narrowest sense, holding that lodgers were not tenants. We acknowledge that classic real property principles do not define a lodger as a tenant. However, this definition based on the character of possession does not control our interpretation of the regulation.

Instead of this technical distinction, we rely on the more common usage of the term "tenant." In ordinary language, persons who share possession of the premises they hire are still considered "tenants." A dictionary definition of tenant includes "one who has the *occupation or* temporary possession of land or tenements of another . . ." (Webster's New Collegiate Dict. (9th ed., 1984) p. 1214, italics added.) In legal contexts, as well, the term "tenant" is used to encompass "lodger." In *Soave, supra,* for example, the court used the terms "landlord" and "tenant" repeatedly when referring to proprietors and lodgers. (*Soave* v. *Milliken, supra,* 497 F.Supp. 254, 256-257, 259.) Also, in the Civil Code, the word "tenant" includes lodgers. (See, e.g., Civ. Code, §§ 1941.2, 1942.) █ Thus, "tenant" is commonly understood to include persons who share possession of the premises they rent. █ The record contains no evidence that the county supervisors intended "landlord-tenant" to be construed narrowly when they enacted the amendment to the shared housing restriction. There is therefore no reason not to interpret "tenant" in its broader sense.

The broader interpretation of "tenant" is in accord with a number of principles of statutory construction. Section 11000 states, "[t]he provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program." Denying housing benefits to one who is obliged to pay rent solely because he shares possession cannot be considered equitable since there is a legitimate housing need which is not being met. As discussed, such a distinction does not further the goals of public assistance.

 In addition, it is well settled that an ordinary language interpretation of words in an ambiguous enactment is preferable to a technical definition. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].) The narrow definition of tenant as an occupier not in control of a premises is a technical legal meaning; while the broader definition discussed above is the more common interpretation of the word.

Finally, "[a]n interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) As discussed, the regulation as interpreted by the welfare department and the trial court is inconsistent with section 17000. If the provision is to be valid it cannot exclude applicants solely on the basis of character of possession, regardless of housing need. Thus, the tenant exception to Lake County's shared housing restriction must be read to include lodgers who must pay rent despite the fact that the proprietors retain control of the premises.

## DISPOSITION

The Lake County Welfare Department abused its discretion in failing to consider Clay a "tenant," thus excluding him from housing benefits in a manner inconsistent with the dictates of section 17000. A writ of mandamus may issue in cases where an administrative agency has abused its discretion by acting in a manner not in accord with the law. (Code Civ. Proc., § 1094.5; Welf. & Inst. Code, § 10962.) We therefore reverse the decision of the superior court and order the Lake County Welfare Department to set aside its decision denying Clay housing benefits.

Kline, P. J., and Rouse, J., concurred.