[No. C002157. Third Dist. Sept. 21, 1989.*]

JEAN GUIDOTTI et al., Plaintiffs and Appellants, v.
COUNTY OF YOLO et al., Defendants and Respondents.

* Review granted December 7, 1989. Review dismissed and opinion ordered published August 1, 1990.

COUNSEL

Cindy Parker, Daniel L. Seigel, Robert Newman and Melinda Bird for Plaintiffs and Appellants.

Charles R. Mack, County Counsel, for Defendants and Respondents.

OPINION

**CARR, Acting P. J.**—In this appeal from a summary judgment, plaintiff Jean Guidotti and other general assistance recipients in Yolo County

challenge a resolution by the Board of Supervisors of Yolo County which establishes the grant levels of aid for general assistance.

Plaintiffs had filed a class action suit against Yolo County (County) for declaratory and injunctive relief, or in the alternative for a peremptory writ of mandate. The action called into question County's standards of general assistance relief and sought retroactive benefits, alleging County had failed during the prior three years to meet its mandatory duty to support its indigent residents as required by Welfare and Institutions Code section 17000.[1] The trial court found plaintiffs had presented significant evidence that County's general assistance standards were inadequate and ordered County to conduct a study of minimum subsistence needs and to adjust the standards. The court denied plaintiffs' motion for class certification, finding it had no power to order County to pay retroactive benefits. After conducting a study and adopting new standards of aid, County moved for summary judgment on the basis it had complied with the court order. Plaintiffs opposed summary judgment on the ground there was a factual issue concerning the adequacy of the housing allowance. The trial court granted summary judgment in favor of County and did not consider plaintiffs' renewed motion for class certification. Plaintiffs appeal, contending 1) the trial court erred in failing to review County's study of minimum subsistence needs and that, had it done so, it would have found a factual issue existed as to the adequacy of the housing allowance and 2) the court erred in failing to again consider the motion for class certification. We shall reverse the judgment and remand to the trial court for further consideration consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are indigent residents of County who receive general assistance (GA) grants for support. In November 1985, plaintiffs filed this class action complaint for declaratory and injunctive relief and, in the alternative, for a peremptory writ of mandate against County. The complaint was framed in three causes of action. The first cause of action focused upon County's resolution No. 81-1, adopted in January 1981, which set GA standards of aid and care for the indigent at $174 per month for an individual and $248 for a couple. Plaintiffs alleged the policies set out in the resolution were inadequate when adopted and unsupported by proper studies. They urged the present levels of aid were below minimum subsistence levels and that County's action in establishing and maintaining the standards was arbitrary and capricious. In the second cause of action, plaintiffs alleged County has

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise provided.

failed to relieve and support the indigent and dependent poor in violation of the mandate of sections 10000 and 17000. Asserting County's duty of support is measured by the standards set for aid to families with dependent children (AFDC) set out in section 11452, plaintiffs contended County has failed to fulfill its statutory duty. In the third cause of action, plaintiffs alleged County's failure to conduct timely and reasonable studies for the purpose of setting GA grant levels violates their due process rights under the federal and state constitutions. In support of their motion for preliminary injunction, plaintiffs attached declarations from GA recipients in which the recipients stated in effect that they were unable to subsist on the GA allotment. In their prayer for relief, plaintiffs requested the court declare County in violation of the statutory scheme for GA aid and find the GA grant levels constitutionally inadequate, order County to conduct fact-finding studies regarding minimum subsistence needs and to adjust current GA grant levels and to order County to conduct annual studies.[2] Alternatively, plaintiffs requested a peremptory writ of mandate to compel County to conduct a study and to adjust GA standards.

Plaintiffs further sought monetary damages for retroactive GA benefits for all persons who have received benefits during the last three years, such retroactive benefits to be calculated on "the difference between the monthly benefits recipients should lawfully have been entitled to *as determined by this court,* and the actual benefit amount actually paid out to the recipient." (Italics added.) Plaintiffs filed a motion pursuant to Code of Civil Procedure section 382 for preliminary class certification for "all persons currently receiving or who have received GA benefits from [County] at any time during the three years prior to the filing of this complaint."

At the hearing on the preliminary injunction, plaintiffs requested an order compelling County to adopt GA standards of $375 per person and an order, effective immediately, increasing aid to $288 pending final hearings. In support of this request plaintiffs filed with the court a study by the Northern California Research Associates entitled "Recommended General Assistance Grant Level for Yolo California for 1985."

County demurred to the complaint on the basis the relief sought by plaintiffs required the court to interfere in legislative activity in violation of the separation of powers doctrine. As to plaintiffs' cause of action for retroactive payments, County asserted this relief was barred by the three-year statute of limitations (Code Civ. Proc., § 338, subd. (a)), laches, and failure to exhaust administrative remedies.

---

[2] Plaintiffs posit their prayer for injunctive relief in the negative. They request that the court "enjoin [County] from failing to undertake the fact-finding, deliberation and public proceedings necessary to establish an appropriate, adequate, and humane [GA] grant level."

The trial court overruled County's demurrer and, finding plaintiffs had presented convincing evidence that current GA grant levels were "grossly inadequate," the court ordered County "with all deliberate speed" to reconsider and adjust its standards of GA assistance.[3] Stating "the methodology is up to the Board of Supervisors," the court ordered "that the matter of the adoption of standards be considered in an open meeting." The court ordered County to present evidence at a later court hearing to demonstrate it had taken steps to comply with the order.

The court denied plaintiffs' request for an order compelling County to conduct annual reviews and denied plaintiffs' requests for all other preliminary injunctions and writs of mandate. Finding it had no power to compel County to pay specific sums or to disburse funds because of the separation of powers doctrine, the court concluded it was prohibited from ordering the immediate increase in benefits requested by plaintiffs. The court further denied plaintiffs' petition to establish a preliminary class certification, finding class certification was "unnecessary for the establishment of new standards." Plaintiffs did not then seek review of the order denying their request for retroactive benefits or of the order denying the motion for class certification.

County conducted a study to determine minimum subsistence needs.[4] After surveying costs of housing, utilities, food, clothing, household items, personal hygiene and transportation, County submitted to the board of supervisors (Board) a written report and draft resolution, later designated resolution No. 86-109, recommending an increase in GA standards from $174 to $235 for an individual. The proposed standards included an increase in the housing allowance from $100 to $121 based upon a survey of the amounts paid for housing by GA recipients for the month of November 1985.

---

[3] In making its order for a further study the court found: [¶] "Plaintiffs, by their exhibits on file, have presented convincing evidence that the GA level in Yolo County may not comply with W&I Code § 10000, when considered in conjunction with §§ 17000 and 17001. . . . In Yolo County the Board by its 1981 adopted standards allocated $174 per month for an individual. This is broken down as follows: food $56, housing $100, utilities $10, personal needs $4, and transportation $4. [¶] If two persons from a household the $174 is increased to $248 monthly. . . . Plaintiffs have gone to great length with their evidentiary exhibits, specific case studies, and verbal arguments at the hearing to demonstrate that people cannot reasonably be expected to subsist on the Yolo County allocation. No specific case study is necessary. It would be difficult for anyone, upon a simple observation of the numbers, to dispute that the Yolo County standards of general assistance are grossly inadequate and even, perhaps disgraceful. . . . [I]t is difficult for this Court to comprehend that in this prosperous state it is intended that such necessities be provided on a monthly allocation of $174 per person or $248 per couple."

[4] The study was conducted by the Department of Social Services.

The Board conducted a public hearing, which plaintiffs attended and there attacked the proposed standards as inadequate to meet minimum subsistence needs. Plaintiffs specifically challenged County's proposed housing allowance increase from $100 to $121. Plaintiffs informed the Board that County had not conducted a vacancy study but had instead averaged the rent paid in November 1985 by GA recipients who were receiving a total of $174 in GA aid. Plaintiffs presented evidence that the Department of Social Services' own housing referral lists had no listings for $121 or less and that most required security deposits. Plaintiffs submitted declarations from six GA recipients that their rents ranged from $135 to $400 per month although the GA housing allowance was $100. Plaintiffs also submitted their own study of minimum subsistence needs conducted by an independent research team, the Northern California Research Associates (NCRA), which recommended a minimum increase in GA standards to $375 for an individual. The NCRA study recommended a housing allowance of $190 per month based upon the cost of available housing as demonstrated in the local classified ads of the newspaper.

County did not challenge plaintiffs' assertions that the cost of housing listed in classified ads was significantly higher but defended its choice of methodology for determining a minimum housing allowance, claiming reliance on classified ads to determine cost of housing was not reliable. County submitted a report study which asserted NCRA's reliance on classified ads was faulty because relatively expensive housing opportunities are over-represented and housing decisions are, in fact, based on numerous information sources, including informal information networks. County also asserted reliance on classified ads did not take into account the size of the community surveyed or the geographic distribution of GA recipients.

The Board adopted resolution 86-109 submitted by County, which prospectively increased the GA grant levels to $235 effective July 1, 1986.[5]

County filed a motion for summary judgment on plaintiffs' complaint on the basis it had complied with the court's order to conduct a study and to adjust the GA grant levels and that plaintiffs' complaint was now moot because it attacked resolution 81-1, which had been superseded by resolution 86-109. Plaintiffs opposed the motion and filed a second motion for preliminary injunctive relief alleging, inter alia, the housing allowance was inadequate because the study conducted by County was faulty. Plaintiffs submitted to the court the exhibits presented to the Board, as well as

---

[5] The resolution passed by Board increasing the monthly allowance adjusted it to only $227 monthly as the clothing and household items were an initial one-time allowance of $21 and $26 respectively, the clothing allowance to be reevaluated at the end of six months, the household items to be initially allowed only if unavailable through donations or other sources.

additional information challenging the housing allowance. Plaintiffs filed a second motion for preliminary class certification.

The trial court rejected County's mootness argument but granted summary judgment in favor of County, finding County had complied with the order to review and readjust GA standards. In making this decision, the court found the adequacy of the studies relied upon by the Board when it set the new standards and levels of aid was not a matter for judicial determination but a political or legislative decision[6] and the only issue to be decided by the courts was whether a bona fide study had in fact been made for the promulgation of new standards. This standard of judicial review was expressed by the trial court as: "There is one obvious qualification: the study must actually be a study. If it were so bizarre, so totally worthless and unusable that no reasonable person could consider it to be fairly described as a 'study' then there would indeed be no study at all, and the board would have failed to comply with [the previous] order and the law. But we do have bona fide studies here, discussed and relied upon by the board, imperfect though they may be. The inquiry of the court must stop here."

The court then observed "that the factual disputes asserted by plaintiffs as a barrier to summary judgment arise from those facts offered by plaintiffs to attack the methodology, accuracy, and quality of the studies relied upon by the Board. These disputes do not prevent summary judgment because, as we have seen, the adequacy of the studies is not the court's concern. The actual existence of the studies is the issue, and there is no serious dispute as to the fundamental fact that here studies were prepared, presented, discussed at public meeting, and relied upon by the Board."

The other motions were not considered as the trial court found summary judgment to be dispositive. This appeal followed.

## DISCUSSION

### I

On appeal, plaintiffs assert the trial court erred in granting summary judgment in favor of County as there exists a factual controversy concern-

---

[6] In its written decision, the court stated: "If this court were to accept the job of determining the adequacy of such socio-economic studies, and to reject certain studies as 'inadequate' (based on expert testimony? whose expert?) the court would be right smack in the middle of the political process. The use of expert witnesses required to make such a determination would let the result be determined by which set of experts one decided to follow. (Do you want your economist from the University of Chicago, or from Harvard?) This is a political (legislative) not a judicial decision."

ing the adequacy of the housing allowance.[7] Plaintiffs urge that County's methodology of determining the cost of housing is faulty as it is based on a survey of costs paid by GA recipients who receive only $174 per month in aid, of which $100 is the housing allowance, and does not address the actual cost of renting available living quarters. They argue that their evidence of the actual costs of housing creates a triable issue of fact which precludes summary judgment on whether County has complied with the statutory mandate of sections 17000 and 17001. Plaintiffs assert the trial court erred in determining it had no power to review the "adequacy" of County's study and erroneously determined there were no factual issues of County's compliance with the February order. Because summary judgment was improperly granted, plaintiffs conclude the court erred in failing to rule on their motion for class certification.

County, in turn, asserts the court correctly determined it had no authority to review the adequacy of the study as the adoption of GA standards constitutes a legislative act of rule-making with which courts should not interfere so long as the reasonableness of the evidence before the Board is "at least debatable."[8]

 Preliminarily we observe the scope of judicial review is neither as broad nor restrictive as the standard advanced by each side herein. Plaintiffs in effect assert they are entitled to an independent adjudication of the cost of minimum subsistence in Yolo County. Defendants urge judicial review is restricted to the review appropriate to purely legislative acts, which is postulated as "whether the reasonableness of the evidence before the Board of Supervisors was at least debatable."[9]

County admitted the cost of housing represented in classified ads, the basis of plaintiffs' study, was higher than the cost of minimum subsistence housing as determined by County's methodology. Plaintiffs treat this factual

---

[7] Plaintiffs do not challenge the other elements of the GA standards and we do not consider them.

[8] At one point in its brief County appears to casually suggest the standard is "arbitrary, capricious or entirely lacking in evidentiary support" but the overwhelming reliance by County is on a test enunciated by County as "whether the reasonableness of the evidence before the Board of Supervisors was at least debatable."

[9] We assume County means the conclusion of Board on which evidence is received is the debatable item, not the evidence. This "reasonably debatable test" espoused by County is from *Minnesota* v. *Clover Leaf Creamery Co.* (1981) 449 U.S. 456 [66 L.Ed.2d 659, 101 S.Ct. 715], in which the Supreme Court, in applying the "rational basis" standard in determining an equal protection challenge to a Minnesota statute which banned plastic milk containers but not paperboard, held that parties opposing legislation may introduce evidence it is irrational but cannot prevail if from all the evidence the question is "at least debatable." (449 U.S. at p. 464 [66 L.Ed.2d at p. 672].)

dispute as the critical issue precluding summary judgment.[10] Plaintiffs mistake the issuable facts in this proceeding. As this court stated in *Poverty Resistance Center* v. *Hart,* (1989) 213 Cal.App.3d 295, 302 [261 Cal.Rptr. 545]. "The issuable facts . . . are not the costs of a subsistence living in [the] County. . . . [T]hey are the facts considered by the Board in setting the grant levels. That is so because it is the lawfulness of the Board's action in setting the standard of aid which is under review. ■ 'A court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. [However, a] court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.' [Citations.] The relevant factors must be derived from the statutes which govern the agency action."

■ Contrary to plaintiffs' assertion, the factual inquiry herein is limited to the facts before the Board and on which the Board's determination of grant levels was predicated. (See *Poverty Resistance Center, supra*; *California Hotel and Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212 [157 Cal.Rptr. 840, 599 P.2d 31].) The evidence developed through discovery by plaintiffs subsequent to the Board resolution was not properly before the trial court. As we stated in *Poverty Resistance Center, supra,* "Absent allegations of impropriety in the conduct of the Board proceedings, or in the provision of information to the Board, judicial review is limited to the record of the proceedings before the Board." (*Poverty Resistance Center, supra,* 213 Cal.App.3d at p. 302.)

The statutes defining County's duties in setting GA standards are sections 17000 and 17001. Section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." Under section 17000, GA is ". . . the residual fund by which indigents who cannot qualify for and under any specialized aid programs can still obtain the means of life . . . ." (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231].) Section 17000 imposes a mandatory duty upon the County. (*Id.* at p. 676.)

---

[10] Authority for this assertion is found in *Boehm* v. *Superior Court* (1986) 178 Cal.App.3d 494 [223 Cal.Rptr. 716]. (*Boehm II.*) Plaintiffs misread *Boehm II.* The court did state "the study pertaining to housing reveals material facts in controversy" (*id.* at p. 503) but this was not the basis of the court's decision to issue a writ of mandate ordering a preliminary injunction. Relief was granted on the basis that the GA allowance, as a matter of law, was inadequate "because the County fixed the level of GA without considering the necessities" of clothing, transportation and medical care or making an allowance for such needs.

Section 17001 provides: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county." Section 17001 confers broad discretion upon the counties in performing their statutory duty to provide GA benefits to needy residents. (See *Nelson* v. *Board of Supervisors* (1987) 190 Cal.App.3d 25, 29 [235 Cal.Rptr. 305]; *Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 971 [115 Cal.Rptr. 540].) " 'However, there are clear-cut limits. " 'This discretion . . . can be exercised only within fixed boundaries. In administering general assistance relief the county acts as an agent of the state. [Citation.] When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. [Citations.]' " ' " (*Nelson* v. *Board of Supervisors, supra,* 190 Cal.App.3d 25, 29-30 [235 Cal.Rptr. 305], citing *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 211 [211 Cal.Rptr. 398, 695 P.2d 695].)

Keeping in mind the facts before the Board, our task is to determine whether there is evidentiary support in the record before the Board for their action in setting the grant levels.

Defendants also misperceive the scope of judicial review, asserting in effect that there is no review of the facts on which the Board's determination of grant levels is based. The suggested standard that the Board's conclusion must prevail if from all the evidence presented, the issue of grant levels is debatable is, in our view, too general, too vague and too unfocused to measure the Board action against the statutory mandates of sections 17000 and 17001. Section 17000 mandates a duty on all counties to "relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease or accident." Section 17001 requires counties to "adopt standards of aid and care" to fulfill the duty to relieve and support. As explained in *Poverty Resistance Center, supra,* "Embedded in the statutory requirement that the Board adopt standards of aid and care is the requirement that those standards be sufficient to meet the county's obligations under section 17000. . . . The action of the Board in adopting standards of aid and care must be predicated on facts concerning these actual subsistence costs. . . . The regulatory standard that is promulgated 'must be reasonably supported by the evidence.' . . . This means the factual premises which underpin a standard adopted under section 17001 must be supported

by evidence before the Board and by reasonable inferences drawn therefrom."[11] (*Poverty Resistance Center, supra,* 213 Cal.App.3d at pp. 304-305.)

The trial court herein misperceived its function in reviewing the Board's action when the court limited that review to whether or not study had in fact been made and relied upon by the Board in setting the GA grant levels, with the proviso that the a study made was not "so bizarre, so totally worthless and unusable" that it would not be considered a study at all. The trial court concluded it was being asked to measure the "adequacy" of the study when it was being asked or should have been asked to determine if the Board considered the factors of subsistence mandated by section 17000 and whether there was an evidentiary basis for the grant levels set by the Board for that subsistence. In a sense, this may be a determination of the adequacy of the study in that a flawed or incomplete study equates with an inadequate study. But this is a matter of semantics. Judicial review of the Board's action does not encompass deciding which survey is better, whose experts are more credible or which method of study is preferable. It does encompass whether the evidence before the Board supports the action taken.

It is apparent the trial court did not scrutinize the evidence before the Board to determine if it in fact provided a basis for the Board's ruling. This was precluded by the restricted review employed by that court, i.e., whether a study was done.

Therefore, it is necessary to reverse the summary judgment and remand the matter to the trial court to consider the motion under the appropriate rules of judicial review.

Applying these just-enunciated principles to the case at bar we consider the efficacy of the study at issue, the evidence on which the Board relied.

## II

■ Plaintiffs assert the allocation for housing costs was lacking in evidentiary support because the study on which this allowance was based was flawed in several respects. The maximum individual grant of $235 fixed by Board in response to the initial order of the court included an allowance of $121 for housing. This figure was calculated by the Department of Social Services by ascertaining what the GA recipients for the month of November 1985 paid for rent, totalling those sums, then dividing the number of recipi-

---

[11] Nor does County's general reference to the separation of powers doctrine assist in defining the scope of review. As indicated, the scope of both the Board's and the judicial function is determined by the statutes governing general assistance, sections 17000 and 17001.

ents reporting rent payments into the total rent paid. The final figure was an average of the tabulated recipients' rental payments. Excluded from the survey were recipients reporting subsidized housing and persons whose residences were reported as substandard to the Department of Health by the inhabitants. There were 183 GA recipients during November 1985, of whom 144 paid a total of $17,486.40 for rent, which averaged out as $121.43 per month. This presumably means 39 were in the excluded classes of subsidized or substandard housing. An illustrative graph submitted with the study shows a range of $20 to over $200 per month for rent. Also excluded from the study data were cases involving more than one recipient and those where a monthly charge was made for board and room but the rent charged was not specifically identified. Included in the housing survey were: 1) individuals aged 18 or over who live with parents or other relatives, 2) persons who lived with spouses and or children but did not qualify for other aid, and 3) those living in roommate situations, sharing expenses with unrelated individuals. These shared housing situations comprised 61.7 percent of those surveyed; single person living arrangements comprised 38.3 percent.

Plaintiffs make three complaints about the housing study: 1) It failed to include what it would cost the homeless to obtain housing.

2) It failed to include the cost to a GA couple of housing which was $159 per month as shown by the evidence before the court.

3) It failed to have a vacancy or occupancy study to determine if housing was actually available at $121 per month but simply assumed vacancies existed because the average of rent paid by GA recipients was $121.

The initial contention is not before us on this appeal. Plaintiffs note at the time of the Board action GA recipients were required to have a residence address and homeless persons were denied GA. During this action, another action to enjoin denial of GA to the homeless was brought in Yolo County, action No. 55285. A final judgment reportedly granting the requested relief was entered in that action on July 1, 1987. The notice of appeal in this action was filed March 31, 1987.

The second contention is not properly before us as this information was elicited during depositions taken after the Board action and this evidence was not before the Board at the time it made its determination of grant levels.

The third assertion that there was no evidence presented in the study that housing was available at $121 a month has validity. The assumption in the

study from the collected data is that because GA recipients during November 1985 were able to rent habitable housing at an average cost of $121 per month, with a range of from $20 to over $200 per month, perforce minimum subsistence housing was available at $121 per month. Theoretically this may be true but people do not live in theoretical housing; they live within four walls and hopefully a roof.[12] The only evidence before the Board in the form of many affidavits from GA recipients was that no housing was available at $121 a month. There is no support in the record for a finding that housing is *available* for anyone at $121 per month. Moreover, a survey of GA recipients who were receiving a $100 per month grant for housing in a $174 monthly allotment, found by the court to be "grossly inadequate and ever perhaps, disgraceful," hardly seems a justifiable index of what is required for basic housing in Yolo County. In *Poverty Resistance Center, supra,* this court did state the County could assume shelter costs reported by present GA recipients reflect the cost of habitable dwelling. (213 Cal.App.3d at p. 310.) But there is no indication in *Poverty Resistance Center* that availability of housing was even raised as an issue or that the evidentiary cupboard was barren of vacancy evidence and that overwhelming evidence to the contrary was before the Board.

However, the most significant flaw in the housing study before the Board is the grouping together of disparate groups for the purpose of averaging to determine market value of minimal subsistence housing. There were only 144 GA recipients in the survey after excluding the 39 subsidized and substandard housing recipients. This is a small overall number for averaging, which means any aberration in the process is magnified. Significantly, 61.7 percent of those surveyed *shared* housing. Included in the survey were 18-year-old and older young people who lived with parents or other relatives and presumably paid token rent, which explains why at the lower end of the graph included in the study are persons paying $20, $40 and $60 per month in rent. In the same category are those persons surveyed who lived with a spouse and/or children and were ineligible for federal or state funded aid. Renting from a parent or a spouse is not a market transaction and those persons do not belong in the same group with individuals who are paying market value rent. Averaging is not in itself an unreliable basis for setting grant levels but the averaging must be fair and it must be reasonable. An average is only reasonable if it represents the price at which a person can purchase the service or merchandise at issue, whether it be housing, food,

---

[12] The County emphasizes the level of GA assistance is measured not by pleasure, generosity or even what is minimally acceptable to the average person but what is necessary to survive or basic survival. A person can survive by sleeping on a riverbank, in a car or perhaps even by the side of the road but that could hardly be considered habitable housing. From the affidavits submitted to the Board by plaintiffs, GA recipients were in fact sleeping in cars, uninhabitable shelter or on friends' couches.

utilities or other necessities. There was no acceptable evidence before the Board that $121 a month housing was available. Averaging children who pay $20 to their parents with persons who pay over $200 rent does not produce a market value rental cost.

From the record we are unable to determine how many persons are in each of the three categories of shared housing. We observe only that they total 113 of the 144 surveyed and tabulated. We therefore cannot determine to what degree the final averaged figure is skewed but it would appear to be sufficiently substantial to render the $121 figure invalid. The fact that 61.7 percent of the group shared housing means the survey was weighted in favor of shelter-sharing. Shared housing is a policy which the County recommends and favors but it is not within the statutory mandates of sections 17000 and 17001. Nowhere in the governing statutes is it written that GA recipients must share housing. In fact in *Clay* v. *Tryk* (1986) 177 Cal.App.3d 119 [222 Cal.Rptr. 729], the court determined that a GA recipient who shared housing with a nonaid person was entitled to a housing allowance and invalidated a GA regulation denying a housing or utility allowance to a GA recipient who shared housing with a nonindigent person without a formal landlord-tenant relationship. While a recipient may have a friend or acquaintance who is willing to accept that person as a roommate, we can only comment that this is commendable. The stark reality, even from County's survey that 33.8 percent of the GA recipients tabulated were in single shelter, is that many persons, whether by reason of age, personality, mental problems or personal hygiene, are not able to find another person willing to share living quarters. The relevant statutes do not require housing sharing and it certainly is questionable to imply that GA recipients characterized by County as the "most destitute members of our society" will be able to find other persons to share housing.

We conclude the evidence before the Board does not satisfy the statutory and case law requirements that there be evidentiary support for the Board's action in enacting the resolution in question.

### III

Several subsidiary issues have been raised by both plaintiffs and County.

Plaintiffs assert error in the failure of the trial court to grant their renewed motions to certify the class and to determine this class was entitled to retroactive benefits.

Initially we note there can be no class certification unless it is determined by the trial court that similarly situated persons have sustained

damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage. The trial court did not determine the issue of retroactive benefits. Since the trial court did not rule on these renewed motions, we have before us no order that such benefits are proper or improper. We have no evidence in the record before us that such benefits or the payments thereof even satisfy the requirements of a class action. Until it is determined or not determined that there is a class which has sustained damage by reason of the action or inaction of the Board there is no basis for class certification.

County asserts, in a vacuum, several contentions not relevant and/or appropriate to this appeal. County asserts fiscal hardship is still a viable defense in this action. County did not tender this defense to the present level of grant allowances. It conceded that the grant levels set by the Board could be fiscally met by County. This defense may become an issue down the road in this litigation but it is not before us in this appeal.

■ Mootness of the issue of validity of the GA grant levels is urged by County since the complaint attacks the 1981 resolution and the 1986 resolution is the one under attack by plaintiffs in this appeal. The trial court found against County on this issue. We agree it is not properly an issue in this appeal and comment that of all the arguments by County on appeal this is certainly the most specious. The complaint alleged the 1981 standard was defective and sought relief, among other things, to order County to conduct a study to determine the proper level of GA aid. The trial court found the level of aid was grossly inadequate and bordering on disgraceful. The County commissioned a study in response to the court order to determine the proper level of GA assistance. A study was done and presented to the Board and the Board set a new and higher level of GA subsistence. But to urge that the new resolution renders the complaint on the old resolution moot is to urge the lawsuit was static, not dynamic, and a new complaint must be filed to test the 1986 resolution. This plainly is absurd. The lawsuit requested Board action, Board action resulted and plaintiffs now challenge that Board action. That is what this lawsuit was all about. This appeal questions the validity of that Board action. To now assert, inferentially, that plaintiffs must file yet another lawsuit or amend the present action before appeal is unfounded and unsupportable. The trial court properly determined the issue was not moot.

County also urges that plaintiffs failed to file a statement of undisputed facts and this alone warrants the granting of County's motion for summary judgment. Suffice to say plaintiffs did file a statement of undisputed facts in conjunction with their opposition to the summary judgment.

## IV

The summary judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Plaintiffs are to recover costs.

Sparks, J., and Sims, J., concurred.